No. 48,092

KOHN ENTERPRISES, INC., *Appellee,* v. CITY OF OVERLAND PARK, KANSAS, *Appellant.*

(559 P. 2d 771)

Opinion filed January 7, 1977.

*Marvin E. Rainey,* of Rainey, Wiglesworth and Duwe, of Overland Park, argued the cause and was on the brief for the appellant.

*Keith Martin,* of Payne and Jones, Chartered, of Olathe, argued the cause, and *Ronald L. Bodinson* of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal by the condemner in an eminent domain proceeding in which the landowner was awarded damages by a jury in district court for restriction of access to its property.

On October 29, 1971, the city of Overland Park filed its petition in eminent domain to acquire an interest in land owned by Kohn Enterprises, Inc., in connection with the city's improvement of the intersection located at 63d street (U. S. highway No. 50) and Foster street. The interest to be acquired was described as a temporary construction easement on an L-shaped tract on Kohn's land consisting of a strip ten by seventy-eight feet along U. S. 50 and fifteen by fifty feet along Foster street. Kohn owned a rectangular tract in the northwest quadrant of the intersection with a frontage of 170 feet on U. S. 50 and 610 feet on Foster street upon which it operated a restaurant and a ninety-three unit motel. The petition made no mention of the acquisition or restriction of Kohn's access to its land.

Prior to the improvement a rock wall existed along the east side of Kohn's property adjoining Foster street southward to a stop

sign along the northeast side of a large sign on Kohn's property which advertised its business. North of the sign there was no access to Kohn's property on Foster street. This sign was about forty to forty-four feet north of a catch basin or storm sewer at the intersection. Kohn's south property line was about fifteen to seventeen feet south of the sign; however, there was no defined boundary line or demarcation at the corner of the intersection between the asphalt on the streets and that on Kohn's property leading into its restaurant and motel, with the result traffic could and did regularly turn off Foster street, south of the commercial sign, onto Kohn's property. Traffic could similarly turn off U. S. 50 onto the motel property. The motel restaurant and office were in a building adjoining the west line of Kohn's property with two separate motel units, separated by a swimming pool, to the north or rear. Prior to the taking there was free access to Kohn's property along its 170-foot frontage on U. S. 50 although the front part of the restaurant and office building was less than a car length north of the highway right-of-way.

The court-appointed appraisers filed their report appraising Kohn's damage by reason of the temporary construction easement. The amount so awarded was paid into court December 17, 1971. Kohn appealed the matter to district court.

Thereafter as a part of its street improvement program the city made several changes in the intersection, which program had been completed at the time of trial. The grade along Foster street adjoining Kohn's property on the west was lowered. At the intersection both U. S. 50 and Foster streets were widened to provide protective left turn lanes and an exclusive right turn lane on Foster; the lanes were clearly defined and channelized by the use of raised medians; on the outside new curb and guttering were provided; a large steel pole with a mast arm out from the pole for a traffic signal was installed at the northwest corner of the intersection; the pole was on the existing right-of-way between the curb and Kohn's property line. A curb about five or six inches high was erected around the northwest corner of the intersection in order to protect the pole. The curbing extended from the commercial sign around the corner and continued westward for a distance of seventy-eight feet along U. S. 50.

Because of these changes restricting its access Kohn constructed a new thirty foot driveway from Foster street onto its property about 100 to 130 feet north of the sign.

After Kohn had taken its appeal from the appraiser's award and prior to trial herein this court decided the case of *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 524 P. 2d 1165, opinion filed July 17, 1974, involving a property in the same condemnation which was directly across the intersection east of Kohn's motel. Thereafter the city attempted to secure from the trial court a pretrial ruling that no evidence should be received as to anything that happened after December 17, 1971, the date of the taking of the property, and further that there has been no compensable taking of access from Kohn. Its argument was that the city had not taken access but had only regulated traffic in a reasonable manner and in no event should an inverse condemnation for a restricted access claim be combined with a proceeding involving a direct condemnation. The trial court declined to make the pretrial rulings sought but in doing so made it clear the taking of access would be an issue in the trial, that it would hear evidence and then rule on the matter prior to submission of the damage issue to the jury.

Trial proceeded accordingly at which both sides offered evidence. The jury found the value of the entire tract prior to the taking to be $600,000 and after the taking to be $580,750, thereby awarding Kohn $19,250 damages. This appeal by the city ensued.

The three points raised by the city on appeal are closely related, with some overlapping in the arguments made in support. As stated in its brief they are:

"I. The Court erred to the prejudice of the condemnor in its ruling that parol evidence was admissible to show an alleged taking of access or other interest in landowner's property.

"II. The Court erred to the prejudice of the condemnor in failing to determine as a matter of law prior to trial whether or not the condemnor acquired access to landowner's property thereby requiring the case to be tried on two different conflicting and inconsistent theories.

"III. The Court erred to the prejudice of condemnor in its ruling that the evidence showed a compensable taking of access rather than a noncompensable regulation of traffic."

The argument in support of the first two amounts to this: Evidence as to any damage to Kohn's property beyond that which was stated to be taken in the eminent domain petition (a temporary construction easement) was, over the city's objection, improperly received by the trial court; an alleged taking, not mentioned in a formal condemnation proceeding, is a *de facto* taking and the subject of an inverse condemnation, which should not be combined

and heard at the same time with a formal condemnation; that to do so requires a case to be tried on two different, conflicting and inconsistent theories; that the court's failure to rule prior to trial whether or not access had been taken had this result, all to the city's prejudice.

In *Brock v. State Highway Commission*, 195 Kan. 361, 404 P. 2d 934, we said:

"In all condemnation cases the only question presented for the jury's determination is the loss to the owner because of the property taken. The fact that there was a taking has been previously determined by the court. . . .

". . . [I]n an inverse condemnation proceeding a trial court should either instruct the jury that there was a compensable taking or direct a verdict for the defendant." (pp. 366-367.)

In *Brock* the landowners were not made parties to a condemnation action but instead brought the suit themselves after the highway commission constructed a frontage road on land already owned by the commission and which lay between plaintiffs' land and a through highway. This court recognized that where the right of eminent domain has not been exercised by the highway commission and an abutting property owner is aggrieved because he feels that his access to a highway has been unreasonably restricted, his remedy is by way of an action for damages in the nature of a suit on an implied contract. Such action is sometimes denominated an inverse condemnation.

Our condemnation statute, K. S. A. 26-508, provides in part:

". . . An appeal by the plaintiff or any defendant shall bring the issue of damages to all interest [interests] in the tract before the court for trial *de novo*. . . . The only issue to be determined therein shall be that of just compensation to be paid for the land or right therein taken at the time of the taking and for any other damages allowable by law."

K. S. A. 26-513 (*d*) 2. provides that factors to be considered in ascertaining the amount of damages to be awarded shall include access to the property remaining.

In the case at bar the trial court held two pretrial conferences after a largely perfunctory pretrial order had been entered. At the conclusion of the second conference the positions of the parties and of the court were made quite clear. Kohn was asserting damages for loss of access—it sought no more than nominal damages for the temporary construction easement but was asserting from $75,000 to $100,000 damages by reason of restricted access. The city contended there was no unreasonable restriction of access and, therefore, no compensation was owing. The trial court expressed

some reservation about the matter but made clear the issues for trial. Its position was well summarized by the following colloquy:

"THE COURT: Does it make any difference also, in this case, whether that [restricted access by reason of curbing] is considered as an inverse condemnation or merely a part of the damages arising out of the condemnation?

"MR. RAINEY: The damages, I would suggest, would be the same—in my opinion they would be the same, whether inverse or condemnation.

"THE COURT: It makes no difference what we call it then.

"MR. RAINEY: That is true. It does make a difference on procedure. It puts us in an impossible position from a procedural standpoint to try an inverse condemnation at the same time we try the formal condemnation.

"THE COURT: I plan to consider that the same as considered in the McCall case, as merely another item which can be considered as possible damages. At this point, I'm not going to have a separate prior hearing of testimony to make the determination as to whether or not this was, in fact, a taking, and is, therefore, compensable. It, however, would be a matter subject to proof during the trial. And in the event the evidence is such that there is a ruling that it is not compensable, then we are faced with two possibilities: Either grant a new trial, or, if it appears it would be adequate, strike all that testimony and all of the values based on that as being the taking, and so instruct the jury. I think both parties are at this point aware of the dangers involved.

"MR. RAINEY: We are, Your Honor, I want to respectfully suggest that the Court has, by implication, ruled that evidence of the alleged taking should be, or is admissible.

"THE COURT: Yes."

At an earlier pretrial conference held some time in advance of trial, at which Kohn was asserting loss of access, the trial court remarked: "As I stated, it appears to me it comes within the purview of the McCall case, and this is a compensable damage in this lawsuit."

At the conclusion of the evidence the court ruled, as a matter of law, that access had been taken and instructed the jury accordingly. No complaint is raised as to the instructions given, they are not reproduced in the record on appeal and presumably they were correct.

We do not think that the rule in *Brock* is to be so rigidly applied as urged by the city or that the city was prejudiced by the procedure employed. The city's petition in eminent domain recited that the taking was required for the improvement of a portion of 63d street (U. S. 50) and Foster street and also for "intersection improvement" as shown by prepared plans on file. Some of these plans were identified as exhibits at pretrial conference. At trial the landowner produced evidence respecting the physical situation

after the improvement was completed and evidence as to its purported damage. The city had ample notice as to what to expect. It deliberately charted the course it pursued at trial. The court in effect gave the city an extra opportunity, beyond that afforded by the city's plans and the contentions of Kohn's counsel, to demonstrate there had been no compensable taking. The city chose to ignore the amount of damage arising from alleged loss of access and relied instead on its contention there had been no compensable taking. After the court ruled as a matter of law that there had been a compensable taking the city made no effort to adduce further evidence on the issue.

Much the same contentions arose in *McCall,* which involved a filling station property at the northeast corner of the same intersection and was a part of the same condemnation and intersection improvement as that of Kohn's. Access to the west entrance of the filling station on U. S. 50 was disturbed and changed by reason of a curbing around the intersection. There the city argued that no access rights were taken by condemnation since neither the petition nor the appraisers' report described any access as being taken and it contended that parol evidence should not be admitted to show that the effect of the improvement amounted to a taking in the nature of inverse condemnation. This court rejected the contention, saying:

". . . The value of a service station is dependent almost entirely upon the access the traveling public has to the service station. Where, as here, the taking of property in an eminent domain proceeding surrounds a service station it affects access to the service station. Under these circumstances the effect of the taking upon the access of the traveling public to the service station may be taken into consideration in determining the before and after value." (p. 394.)

Our holding here is that the city was not prejudiced by the trial court's failure to rule in advance of trial whether there had been a compensable taking of access and the court did not err in hearing parol evidence on the issue.

Finally, the city contends the trial court erred in ruling that the evidence showed a compensable taking of access rather than a noncompensable regulation of traffic under the city's police power. As indicated, the court heard evidence pro and con on the matter. Prior to the taking Kohn had access to its motel from Foster street south of the commercial sign for a distance of about forty-four feet. This access was barred by the erection of the curbing around the intersection. Kohn felt compelled to and did build another access

from Foster street about 130 feet north of the sign but its testimony showed use of this access resulted in a loss of security in not having the view from the motel office of persons entering the premises and loss of privacy for motel facilities such as swimming pool, ice and other items provided for patrons.

On U. S. highway 50 access was severely restricted by reason of the curbing extending seventy-eight feet westward from the corner of the intersection. Access remained on the west part of Kohn's property. However, according to the city's exhibit A the motel restaurant and office were less than a car length from the highway right-of-way and there was testimony that the closeness of this building to the highway restricted a motorist's ability to turn onto the motel property on the remaining access, especially if he was driving a large truck. Kohn's expert testimony was that the diminution in value to its property by reason of these access changes amounted to $60,000.

We think this issue is similarly controlled by our holding in *McCall*. There we quoted approvingly from *Brock* the following:

" 'Regardless of the source of origin there has developed a universal rule that the owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken or materially interfered with without just compensation. However, the rights of an abutting owner must be subordinated to the right of the public to the proper use of the highway and the right of governmental agencies to enforce proper police regulation. The right is subject to reasonable regulation and restrictions for the purpose of providing reasonable safe passage for the public, *but the regulations or limitations cannot be enforced where they unduly limit or unreasonably interfere with the rights of the abutting owners.* The established easement which has been used for access purposes cannot be taken without compensation, but, while the entire access may not be cut off, an owner is not entitled to access to his lands at all points in the boundary between it and the highway. If the owner has a free and convenient access to his property and to his improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has sustained no compensable loss.' (pp. 367, 368.) (Emphasis added.)" (p. 397.)

In upholding a jury's award of damages for restricted access on U. S. highway 50, we held:

"The right of governmental agencies to impose proper police regulations or limitations cannot be enforced where they unduly limit or unreasonably interfere with the rights of the abutting owners of property." (Syl. para. 5.)

A motel property is similar to that of a filling station in its dependence upon access by the motoring public. The property here sustained the same type of access loss as in *McCall*. It is true the

city offered evidence as to its position with respect to providing safe traffic regulations but we cannot say the situation presented was such as to take the Kohn property out of the ambit of the rules applicable to its neighbor across the street. Nothing offered by the city compelled such differentiation as a matter of law. The court gave the city the benefit of any question in holding an evidentiary hearing on the matter and its ruling that there was a compensable taking of access was amply supported by the evidence.

The judgment is affirmed.

APPROVED BY THE COURT.