No. 95,483

MICHAL KORYTKOWSKI and TT & T SALVAGE and TOWING SERVICES, INC., *Appellants,* v. CITY OF OTTAWA and DEBRA MILLER, SECRETARY OF THE KANSAS DEPARTMENT OF TRANSPORTATION, *Appellees.*

(152 P.3d 53)

Opinion filed February 2, 2007.

*James B. Jackson*, of Independence, Missouri, argued the cause and was on the briefs for appellant.

*Robert L. Bezek, Jr.*, of Bezek, Lowry & Hendrix, of Ottawa, argued the cause and was on the brief for appellee City of Ottawa.

*John M. Cassidy*, Office of Chief Counsel, Kansas Department of Transportation, argued the cause and was on the briefs for appellee Debra Miller, Kansas Secretary of Transportation.

The opinion of the court was delivered by

BEIER, J.: Plaintiffs filed an inverse condemnation action against the City of Ottawa (City) and the Secretary of the Kansas Department of Transportation (KDOT), alleging that a highway construction project on the south and east side of Ottawa unreasonably increased the plaintiffs' amount of indirect travel and left the plaintiffs' real estate with unreasonably restricted access to the system of state highways. This appeal arises out of the district court's summary judgment in favor of defendants. Plaintiffs urge us to reverse the district court and to determine that attorney fees are appropriate under K.S.A. 77-701 *et seq.*

### Factual and Procedural Background

Plaintiffs Michal Korytkowski and TT & T Salvage and Towing Services, Inc., owners of a motel and a tow shop, filed this inverse condemnation action, alleging that a highway construction project

so unreasonably increased indirect travel to their properties and so unreasonably restricted access from their properties to the system of state highways that it constituted a taking of their property without just compensation in violation of the Kansas Private Property Protection Act, K.S.A. 77-701 *et seq*.; the United States Constitution; and the Kansas Constitution.

After a year of discovery, plaintiffs filed a motion for summary judgment. Within 2 weeks, each defendant also had filed a summary judgment motion. Defendants' motions contained identical statements of fact concerning the construction projects, and these statements of fact were uncontroverted by plaintiffs. A summary of the pertinent facts follows.

KDOT undertook an improvement project on Interstate 35 along the south and east side of Ottawa, with the primary goal of reconstructing I-35 from Eisenhower Road northeast past K-68 Highway along the south and east.

The project totally rebuilt I-35 from the soil up. In addition to the reconstruction of I-35 itself, the project (1) removed the bridge carrying US Business 50 Highway (Old Business 50) over I-35 and the associated partial interchange, a half-diamond with only a southbound exit and a northbound entrance; (2) constructed a cul-de-sac on the southern terminus of Old Business 50; (3) removed pavement south of the cul-de-sac to Eisenhower Road; (4) lengthened acceleration and deceleration lanes on and off of the entrance and exit ramps at Eisenhower Road and I-35; and (5) converted the US-59 interchange on I-35 from a cloverleaf to a standard diamond.

KDOT had proposed building frontage roads as part of its project, but the City and Franklin County (County) objected to those concepts. After initially opposing removal of the Old Business 50 bridge, once they understood that KDOT would not build a frontage road along the interstate and that KDOT would participate with the City in making various other improvements, the City and County eventually agreed to the removal of the bridge.

As a result of the project, Old Business 50 was reclassified and removed from the state highway system.

Before the project was undertaken, defendants' studies demonstrated that half diamond interchanges such as that at Old Business 50 and I-35 could be confusing to the unfamiliar driver. In addition, KDOT concluded that the Old Business 50 bridge was too short to accommodate horizontal clearance for a new interchange, and too low for the vertical clearance necessary to meet new design criteria and solve drainage problems in the area. Removal of the bridge permitted KDOT to extend the entrance and exit ramps of the two adjacent full interchanges, thus improving weave, acceleration, and deceleration at those points.

KDOT participated with the City in other nearby street improvements, including intersection reconstruction at US-59 and 23rd Street; removal of Princeton Bridge and an associated roadway at the Old Business 50 and US-59 connection near 17th Street; and asphalt overlays on portions of 23rd Street, Eisenhower Road, and Old Business 50.

To support removal of the Princeton Bridge over US-59, the City relied on a 1995 analysis and recommendations concerning Ottawa traffic planning from the engineering and architecture firm of Bucher, Willis and Ratliff (BWR). The BWR report calculated potential advantages to the City, including cost decreases, safety increases, and opportunities for development. It also asserted that the existing road configuration at US-59 and Old Business 50 created "driver confusion," caused "continuity problems," and created "excess circulation."

The following drawings illustrate the road configurations before and after the KDOT and City projects.

*BEFORE CONSTRUCTION*

*AS CONSTRUCTED*

Plaintiffs' businesses are the only two located on Old Business 50 south of 23rd Street, essentially between construction sites for the projects. The properties are one-eighth to one-quarter mile north of the old partial interchange between Old Business 50 and I-35, and nearly three-quarters of a mile south of the former Princeton Bridge at US-59.

KDOT had several public meetings with the City and County and local property owners to discuss the improvements; plaintiffs routinely attended these meetings; and at least once they voiced concern about the impact on their businesses.

In its motion for summary judgment, KDOT asserted that its policy is to identify and negotiate with landowners for the purchase of property actually necessary for acquisition. It stated that it looks at all options before making a decision, but it does not perform "a full-blown, formal impact study" on every property within a project unless warranted under the circumstances. It did not perform an impact study regarding the effect of the projects on plaintiffs' properties because no land was acquired from them. Moreover, according to KDOT's design team of engineers, the improvements would not create an unreasonable amount of additional indirect travel for plaintiffs or deny them reasonable access to the surrounding road network.

Plaintiffs disputed the bases for and the findings contained in the BWR report. Plaintiffs also took issue with the suggestions that the half-diamond interchange at Old Business 50 and I-35 was dangerous and/or confusing to drivers, that it was rendered unnecessary by the full movement interchanges at Eisenhower Road and at US-59, and that those interchanges provided reasonable access. However, plaintiffs offered no evidence rebutting facts or data in the BWR report or the conclusions of KDOT's studies.

Plaintiffs also disputed KDOT's conclusions that the project did not result in an unreasonable amount of indirect travel and that the project left them with reasonable access. Plaintiffs noted that, as a result of the construction, their direct north connection via Old Business 50 to downtown Ottawa is "gone"; the Princeton bridge is "gone"; their properties are now on a "dead-end" cul-de-sac; the "easy access to I-35 . . . is gone"; and "[t]here is no

through traffic" passing the properties as there was previously. By way of their own affidavits, plaintiffs suggested that "some portion" of Korytkowski's motel business was truck and large vehicle traffic that "may have chosen to stay at the motel because they would not have to drive through the City if they exited [at I-35 and Old Business 50]," implying that the projects had caused Korytkowski to lose business. TT & T Towing asserted that it had been unable to rent its offices since the construction, presumably as a result of the construction projects.

The district court did not set out any specific findings of fact but noted that no "significant facts" were in dispute. The district judge concluded that "the action of the defendants was not a taking as provided under the Laws of the State of Kansas or the Constitution of the United States."

### Standard of Review

This court's standard of review when a motion for summary judgment has been granted is well established and often recited:

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *Scott v. Hughes*, 281 Kan. 642, 644, 132 P.3d 889 (2006).

To establish a claim for inverse condemnation, a party must establish an interest in the real property and a taking. *Deisher v. Kansas Dept. of Transportation*, 264 Kan. 762, 772, 958 P.2d 656 (1998). The question of whether there has been a compensable taking is one of law. 264 Kan. at 772.

### Analysis

We agree with the district court and the parties that this case

involves no genuine issue of material fact. The plaintiffs have an interest in the subject properties; there was no physical taking of plaintiffs' properties; and the projects left the plaintiffs with the same access to the abutting roadway, *i.e.*, Old Business 50, that they had before the project. Plaintiffs' access to the nearby highway system was changed, not for the better.

The only dispute centers on the legal question of whether the indirect travel now required to access the nearby highway system means there was a compensable taking of plaintiffs' property for purposes of K.S.A. 77-701 *et seq.* or the United States or Kansas Constitutions. Although the plaintiffs do not clearly differentiate them in their briefs, they advance two arguments to persuade us there was a taking: (1) The defendants' interference with plaintiffs' "right of access" to a system of roadways constituted a taking; and (2) the defendants unreasonably "restricted access" to plaintiffs' properties, which constituted a taking. These arguments are distinct under Kansas law. We discuss each in turn.

## Right of Access

" '[R]ight of access' is traditionally defined as an abutting landowner's common-law right of access from the landowner's property to abutting public roads." *City of Wichita v. McDonald's Corp.*, 266 Kan. 708, 718, 971 P.2d 1189 (1999); accord *Brock v. State Highway Commission*, 195 Kan. 361, 370, 404 P.2d 934 (1965). When the government actually blocks or takes away existing access to and from property and an abutting road, the landowner is generally entitled to compensation. 266 Kan. at 718; see *Kohn Enterprises, Inc. v. City of Overland Park*, 221 Kan. 230, 559 P.2d 771 (1977) (upholding finding of damages for reduction in property value based on elimination of access point to abutting highway); *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, Syl. ¶ 4, 524 P.2d 1165 (1974) (landowner compensated for diminution of value when one entrance to business from abutting highway permanently closed).

This does not qualify as a "right of access" case. Before defendants' projects, plaintiffs' properties had direct access to Old Business 50. They still have direct access to Old Business 50. They

never had direct access to I-35 or US-59; rather, the properties were located one-eighth to one-quarter mile from a partial interchange at I-35 and three-quarters of a mile from the junction with US-59. Plaintiffs had only indirect access to these highways and no vested right to it. See *Teachers Insurance & Annuity Ass'n of America v. City of Wichita*, 221 Kan. 325, 335, 559 P.2d 347 (1977) ("Access may be defined as the right vested in the owner of land which adjoins a road or other highway to go and return from his own land to the road or highway without unreasonable interference. Such a right to be of any substantial utility must necessarily include the owner's invitees and licensees.").

Restricted Access

Plaintiffs' "restricted access" argument asserts that, even though their properties were not physically taken and their access to the abutting roadway was not disturbed, the construction forced them and their patrons to follow such a "tortuous and circuitous route" to and from their properties that we must hold a taking occurred.

This court has clearly held that "[a]n abutting owner has no right to the continuation of a flow of traffic from nearby highways to the owner's property." *McDonald's*, 266 Kan. at 718; see *Garrett v. City of Topeka*, 259 Kan. 896, 922, 916 P.2d 21 (1996); *Teachers Insurance & Annuity Ass'n of America*, 221 Kan. at 335; *Kohn*, 221 Kan. at 232.

When a landowner's access to an abutting roadway has been taken, there has been an exercise of eminent domain that requires just compensation. When a landowner's access to nearby roadways has been altered or restricted through the regulation of traffic flow, there has been an exercise of the government's police power that must have been reasonable. *McDonald's*, 266 Kan. at 718, 722. In this latter situation, there is no taking, and thus an action for inverse condemnation cannot succeed.

We recently applied these rules in *Kau Kau Take Home No. 1 v. City of Wichita*, 281 Kan. 1185, 135 P.3d 1221 (2006).

In that case, plaintiffs brought an inverse condemnation action against the City of Wichita (City), alleging, *inter alia*, that the City's road construction project eliminating an intersection and turning

the road on which the plaintiffs' restaurant was located into a cul-de-sac significantly altered the route of patrons and thus resulted in a compensable taking. On appeal from summary judgment in favor of the City, the plaintiffs argued that the taking resulted from the restriction of the right of access to their property.

We affirmed the district court, holding: (1) An abutting property owner has no right to the continuation of a flow of traffic to and from nearby highways; (2) the regulation of traffic flow does not involve a taking if the government exercised its police power to promote the safety, peace, health, morals, or general welfare of the people; (3) State action resulting in a mere diminution of property value is not a taking; and (4) the increased driving distance between a landowner's property and nearby roadways was not a taking. *Kau Kau*, 281 Kan. 1135, Syl. ¶¶ 3-5.

The *Kau Kau* opinion cited the ample precedent we have cited here, relying heavily on the *McDonald's* case. In *McDonald's*, 266 Kan. 708, the City of Wichita (City) instituted an eminent domain action to acquire a portion of property at the corner of Dugan Street and West Kellogg Street that belonged to Wal-Mart. As part of its improvement project, the City eliminated the intersection of West Kellogg and Dugan by installing an overpass without an exit onto Dugan. It also converted the outer roads on either side of West Kellogg/US-54 to one-way rather than two-way roads. Before the project, Wal-Mart had two entrances from Dugan and two entrances from West Kellogg. After the project, Wal-Mart continued to have two entrances from Dugan and two entrances from West Kellogg; however, patrons had to travel as much as 3 additional miles to reach Wal-Mart's property. Wal-Mart sought an increase in its condemnation award because of diminution in its property value based on circuity of access. It claimed the City's restrictions to its access were unreasonable.

Noting that Wal-Mart had direct access to the same streets before and after the project, and that the City had not closed any of Wal-mart's access points, we concluded Wal-Mart could not consider the restricted access in determining the market value of the property. We also stated that Wal-Mart would not have had a claim

for compensation based only on the restriction of its access to surrounding highways. *Kau Kau*, 281 Kan. at 1192.

*Kau Kau* and *McDonald's* guide the disposition of the restricted access issue in this case. They imply, without stating explicitly, that plaintiffs cannot demonstrate the existence of a taking because of restricted access to nearby roadways, and then they explore the reasonableness of the police power exercise. The further implication is that an unreasonable exercise of such power might support a claim, just not a claim under an inverse condemnation theory. Although reasonableness is the standard by which we determine whether a government's exercise of police power is valid, reasonableness is not the appropriate standard to determine whether a government action affecting real property in private hands constitutes a taking.

Here, the defendants presented ample evidence to support the reasonableness of the projects, and plaintiffs presented no evidence to rebut it, beyond their own unsupported and conclusory affidavits. See *Teachers Insurance & Annuity Ass'n of America*, 221 Kan. 325. Plaintiffs still enjoy direct access to Old Business 50. And, despite the projects' conversion of Old Business 50 into a cul-de-sac to the south of plaintiffs' properties, Old Business 50 still meets 23rd Street to the north one-eighth to one-quarter of a mile from plaintiffs' driveways. On 23rd Street, plaintiffs can reach Eisenhower to the west or US-59 to the east, each about one-half of a mile away from the Old Business 50/23rd Street corner. Eisenhower and US-59 access full interchanges to I-35. Ultimately, the properties are less than three-quarters of a mile from one new full interchange at I-35, and are one and one-quarter miles from another. Plaintiffs also can still access US-59 farther north. The additional travel required after the projects is less than the 2 miles at issue in *Kau Kau* and the 3 miles at issue in *McDonald's*, both of which distances were determined to be reasonable. *Kau Kau*, 281 Kan. at 1188; *McDonald's*, 266 Kan. at 710-11.

## Attorney Fees

K.S.A. 77-709 permits a court to award reasonable attorney fees and expenses "to an owner of private property who successfully

establishes that a governmental action constitutes a taking of such owner's private property." Such an award is predicated on plaintiffs prevailing. Because plaintiffs cannot establish a taking, we need not address questions raised in the parties' briefs concerning the applicability of this statute. See *Smith v. Martens*, 279 Kan. 242, 244, 106 P.3d 28 (2005).

Affirmed.

ALLEGRUCCI, J., not participating.

LOCKETT, J., Retired, assigned.