(186 P.3d 196)
No. 98,761

INDEPENDENT FINANCIAL, INC., *Appellant,* v. RONALD A. WANNA, SUSAN HARJO, *Defendants,* ARGENT MORTGAGE COMPANY, LLC, *Appellee,* UNITED. STATES OF AMERICA US ATTORNEY, UNITED STATES OF AMERICA, *Defendant,* and AMERIQUEST FUNDING II REO SUBSIDIARY, LLC, *Appellee,* v. RONALD WANNA, *et al., Defendants.*

Opinion filed May 23, 2008.

*Bradley R. Finkeldei*, of Stevens & Brand, L.L.C., of Lawrence, for appellant.

*Robert D. Kroeker*, of Martin, Leigh, Laws & Fritzlen, P.C., of Kansas City, Missouri, for appellees.

Before MARQUARDT, P.J., CAPLINGER and LEBEN, JJ.

CAPLINGER, J.: Independent Financial, Inc. (IFI), appeals the district court's grant of summary judgment in favor of Argent Mortgage Company, LLC (Argent). The district court held that IFI, an unlicensed assignee of a supervised loan, had no authority to collect on the loan or enforce its terms pursuant to the provisions of the Kansas Uniform Consumer Credit Code (KUCCC), K.S.A. 16a-1-101 *et seq.*

Because the district court correctly interpreted K.S.A. 16a-2-301(2) to provide that IFI, as an unlicensed assignee of a supervised loan, had no authority to collect on the subject loan or enforce its terms, we affirm the summary judgment.

### Factual and procedural background

This case arises out of a mortgage foreclosure action on a home owned by Ronald Wanna and Susan Harjo. In 1998, Wanna and Harjo took out a second mortgage on their Lawrence home from Ditech Funding Corporation (Ditech) in the amount of $85,000, with an interest rate of 13.75%. Ditech was a supervised lender in Kansas when it made this loan. At the time Wanna and Harjo executed the Ditech note and mortgage, the property was subject to a first mortgage held by Countrywide Mortgage (Countrywide).

Wanna and Harjo subsequently defaulted on their payments to Ditech. Ditech unsuccessfully attempted to settle the outstanding debt; on April 28, 2004, Ditech assigned the note and mortgage to IFI. At the time it took the assignment, IFI was not a supervised lender licensed by the State of Kansas. The Internal Revenue Ser-

vice (IRS) also filed a tax lien on the property, seeking recovery of unpaid taxes.

Negotiations between the parties resulted in an agreement that IFI and the IRS would subordinate their respective liens if Wanna and Harjo agreed to: (1) pay Countrywide in full; (2) pay IFI $36,000, plus $75 per month until the loan was paid in full; and (3) pay the IRS the balance of the available funds, which was believed to be $2,000. Wanna and Harjo signed a promissory note with Argent to obtain the funding for these agreements. Argent paid Countrywide in full and paid IFI $36,000 prior to obtaining or recording the necessary subordination agreements.

Wanna and Harjo received approximately $5,000 in cash from the closing but did not make any payments to the IRS. Wanna and Harjo also failed to make monthly payments to IFI. IFI filed the present action seeking foreclosure of its mortgage and money damages from Wanna and Harjo. Wanna and Harjo subsequently filed for bankruptcy; as a result, the present case is now an in rem action against real property.

Argent answered, alleging that pursuant to the earlier agreement, IFI's mortgage was inferior and subordinate to Argent's lien. Argent then moved for summary judgment, seeking dismissal of IFI's claim for the reason that IFI was not a supervised financial organization and failed to obtain a license pursuant to K.S.A. 16a-2-301(2). Consequently, Argent claimed the Ditech loan was void and IFI was prohibited from undertaking direct collection of the loan.

District Judge Paula Martin issued a well-reasoned and thorough memorandum decision, entering summary judgment in favor of Argent. Judge Martin concluded that although the Ditech loan was not void, IFI, as an unlicensed assignee, violated K.S.A. 16a-2-301(2). As such, the court held that IFI was prohibited from collecting on the loan and foreclosing on the mortgage. The district court reasoned:

"Barring unlicensed assignees from collecting on supervised loans protects debtors to the extent they require protection. When a lender becomes licensed, it has satisfied the State of Kansas that its collection procedures are within regulatory limits. To make the rule otherwise would subject lenders to the possibility

of being permanently barred from collecting on otherwise legal loans. The entity is barred from collecting until it is licensed, and in the meantime, the debtor is protected."

IFI sought to amend the district court's order to permit IFI to take an interlocutory appeal. The district court denied the motion, instead entering a final journal entry decree of foreclosure, which incorporated the court's previous order that IFI was prohibited from collecting on the Ditech loan and foreclosing on the mortgage.

IFI appeals. After the filing of this appeal, the appellees moved for an involuntary dismissal of the appeal, arguing it had become moot by the sale of the subject property at foreclosure. We denied the motion.

*Discussion*

On appeal, IFI challenges the summary judgment order, arguing the district court erred in finding that IFI's violation of K.S.A. 16a-2-301(2) prohibits it from collecting on the Ditech loan and foreclosing on the mortgage.

Our standard of review of a summary judgment decision is often stated:

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, [appellate courts] apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " ' [Citations omitted.]" *Korytkowski v. City of Ottawa,* 283 Kan. 122, 128, 152 P.3d 53 (2007).

Additionally, to resolve this issue we must interpret several provisions of the KUCCC, K.S.A. 16a-1-101 *et seq.* The interpretation of a statute is a question of law over which appellate courts have

unlimited review. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

"The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007).

One of the underlying purposes and polices of the KUCCC is "to protect consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit, having due regard for the interest of legitimate and scrupulous creditors." K.S.A. 16a-1-102(2)(d). As a consumer loan, Ditech's loan was governed by the KUCCC. See K.S.A. 16a-1-301(17), Comment, subsection (17). The loan was a "supervised loan" because it was a consumer loan with an annual percentage rate exceeding 12%. K.S.A. 16a-1-301(46).

K.S.A. 16a-2-301, the primary statute at issue in this appeal, provides:

"Unless a person is a supervised financial organization; or has first obtained a license from the administrator authorizing such person to make supervised loans; or is the federal deposit insurance corporation acting in its corporate capacity or as receiver, such person shall not engage in the business of

(1) making supervised loans; or

(2) taking assignments of and undertaking direct collection of payments from or enforcement of rights against debtors arising from supervised loans, but such person may collect and enforce for three months without a license if the person promptly applies for a license and such person's application has not been denied."

The district court concluded that at the time IFI sought to collect on the Ditech loan, IFI was neither a " 'supervised financial organization,' " as defined by K.S.A. 16a-1-301(44), nor a " 'supervised lender,' " as defined by K.S.A. 16a-1-301(45), as it did not hold a license pursuant to K.S.A. 16a-2-301 and had not applied for such license within 3 months of its collection attempts.

IFI does not dispute the district court's finding that it violated K.S.A. 16a-2-301(2). Instead, it challenges the district court's determination that its violation of the statute prohibits it from col-

lecting on the Ditech loan and foreclosing on the mortgage. IFI contends the only consequence of its failure to obtain a license should be the assessment of an interest penalty under K.S.A. 16a-5-201(3), which allows a consumer to obtain a refund of twice the amount of any excess interest charged.

Appellees point out, however, that the provisions of Article 5 (remedies and penalties) apply only to creditors, and because IFI is an assignee, it is by definition not a "creditor" under the KUCCC. See K.S.A. 16a-1-301, Comment, subsection (20) ("assignees are not 'creditors' "). IFI counters that K.S.A. 16a-5-201(3), unlike the other provisions of K.S.A. 16a-5-201, does not apply solely to creditors, as every provision other than subsection (3) begins with the language "[i]f a creditor . . . ."

Read in context, however, it is clear that Article 5, section 2 of the statute applies only to consumers' remedies for violations by creditors. Our interpretation is supported by K.S.A. 16a-5-201, Comment 4, which provides that subsection (3) applies only "with respect to excess charges by a creditor." Because IFI is an assignee, it is not a creditor under the KUCCC, and we reject IFI's invitation to apply the penalty provision of K.S.A. 16a-5-201(3) to the facts herein.

We next consider whether the district court properly found that IFI was not allowed to collect on the loan because it failed to obtain a license pursuant to K.S.A. 16a-2-301(2).

The language of the statute clearly and unambiguously requires an assignee of a supervised loan to be licensed as a supervised lender before taking an assignment or directly collecting on such a loan. Notwithstanding this requirement, the statute allows for a 3-month grace period in which an assignee that is not a supervised lender may "collect and enforce" a loan if the assignee "promptly applies for a license and such person's application has not been denied." See K.S.A. 16a-2-301(2). It is undisputed that IFI did not obtain a license within the relevant 3-month period.

IFI's claim that it is entitled to collect on the Ditech loan and foreclose on the mortgage despite its failure to attain or seek "supervised lender" status would render the 3-month grace period meaningless. Generally, we construe statutes to avoid unreasonable

results and presume the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006).

Further, the State clearly has an interest in regulating supervised lenders and their assignees, as evidenced by the legislature's requirement that the State regulate the business of making and taking assignments of supervised loans by determining whether persons engaged in this sort of business have acceptable "financial responsibility, character and fitness." K.S.A. 16a-2-302(1)(a). IFI's statutory interpretation is contrary to the legislature's intent, as it would render Article 2 of the KUCCC meaningless as to assignees of supervised loans and would deprive the State of the ability to police assignees, like IFI, who engage in the business of taking and collecting on assignments of supervised loans.

Relying upon K.S.A. 16a-5-201(5), IFI next suggests it may enforce the Ditech loan regardless of its status as an unlicensed assignee. That statute provides: "*Except as otherwise provided,* no violation of the provisions of K.S.A. 16a-1-101 through 16a-9-102, and amendments thereto, impairs rights on a debt." (Emphasis added.) K.S.A. 16a-5-201(5). IFI reasons that its violation of K.S.A. 16a-2-301(2) does not impair its rights on the Ditech loan, and therefore, it may still enforce the otherwise valid obligation.

Based on our conclusion that Article 5 of the KUCCC applies only to creditors, IFI's argument fails. Additionally, IFI ignores the opening clause of K.S.A. 16a-5-201(5): "Except as otherwise provided . . . ." The rights on a debt are specifically impaired under K.S.A. 16a-2-301 if the assignee has not obtained a license to engage in the business of taking an assignment of a supervised loan and collecting on the loan. Our conclusion is supported to K.S.A. 16a-5-201, Comment 5: "Under subsection (5), except in cases where the obligation is expressly voided by the [KUCCC] (as, for example, in cases involving unlicensed loans under K.S.A. 16a-2-301 . . .), the creditor may enforce an otherwise valid obligation . . . ."

IFI also contends the district court's holding that it cannot enforce the loan amounts to a voiding of the loan; yet, IFI suggests

the court may only void a loan in which a creditor violated the statute.

However, the district court specifically held that the Ditech loan was not void under K.S.A. 16a-5-201(2) because Ditech was properly licensed in Kansas at the time it made the original loan. The district court also aptly noted that Ditech's subsequent relinquishment of its license was of no consequence, pursuant to K.S.A. 16a-2-303(3). The district court's ruling did not affect the validity of the original loan. Rather, the loan was unenforceable due to IFI's failure to become licensed.

The district court correctly interpreted K.S.A. 16a-2-301(2) to provide that IFI as an assignee of a supervised loan had no authority to collect on the Ditech loan or enforce its terms by failing to become licensed under the statute. The district court properly granted summary judgment in Argent's favor.