(206 P.3d 63)
No. 100,272

CITIFINANCIAL AUTO, INC., *Appellee*, v. MIKE'S WRECKER SER-
VICE, INC., *Appellant*, and KSU FEDERAL CREDIT UNION and
AARON MONIHEN, *Defendants*.

Opinion filed May 1, 2009.

*William B. Barker*, of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, for appellant.

*Michael R. Munson*, of Woner, Glenn, Reeder, Girard & Riordan, P.A., of Topeka, for appellee.

*David W. Hauber* and *Nicholas J. Porto*, of Baty, Holm & Numrich, P.C., of Kansas City, Missouri, for *amicus curiae* Kansas Motor Carriers Association.

Before MARQUARDT, P.J., MALONE and CAPLINGER, JJ.

MALONE, J.: Mike's Wrecker Service, Inc. (Mike's ), appeals the district court's decision granting summary judgment in favor of Citifinancial Auto. Inc. (Citifinancial). Citifinancial had a lien on a 2004 Ford Mustang purchased and titled in Nevada. After local police discovered the Mustang abandoned without any tags in Manhattan, Kansas, they called Mike's to tow and store the car. Pursuant to K.S.A. 8-1101 *et seq.*, Mike's claimed a lien on the Mustang for the value of its services. After requesting verification of the last registered owner and any lienholders from the Kansas Department of Revenue, Division of Vehicles (division of vehicles), and receiving a response of "no records found," Mike's published notice in the local newspaper of its intent to auction the Mustang.

Citifinancial did not receive notice of the sale. Mike's purchased the Mustang, valued between $11,000 and $12,000, at its own auction for a $500 bid.

Citifinancial sued Mike's to recover the value of its lien in the amount of $8,641.52. The district court granted summary judgment in favor of Citifinancial and found that Mike's failed to make a reasonable effort to notify Citifinancial of the sale. We agree with the district court that under the circumstances, especially given the value of the Mustang, Mike's efforts to notify Citifinancial of the sale may not have been reasonably calculated to satisfy due process. However, we conclude the evidentiary record was insufficient for the district court to resolve the due process issue on summary judgment. Accordingly, we remand the case to the district court for further proceedings.

*Factual and procedural background*

On October 3, 2005, Citifinancial financed the purchase of a 2004 Ford Mustang for Tommie P. Canady of Las Vegas, Nevada. The State of Nevada issued a certificate of title for the Mustang and listed the owner as Canady and the lienholder as Citifinancial.

On January 17, 2006, police officers found the Mustang in a parking lot in Manhattan, Kansas. The Mustang did not have any license plates, and the police issued a citation for a parking violation. The police then asked Mike's to tow the Mustang away from the location. Mike's towed the Mustang to its place of business and stored the vehicle there.

One week later, on January 24, 2006, Mike's submitted a request to the division of vehicles for verification of the last registered owner and any lienholders for the Mustang based on the vehicle identification number (VIN). The division of vehicles returned the request and indicated "no record found."

On February 20, 2006, Mike's published a notice in the Manhattan Mercury newspaper of its intent to publicly auction the Mustang the following day, February 21, 2006, at 8 a.m. to satisfy the storage and towing fees of $870. In addition, the printing fees for publishing the notice were $23.90. Because Mike's did not

know the identity of the owner or know of any lienholders, Mike's did not mail notice of the sale to Canady or Citifinancial.

On February 21, 2006, Mike's purchased the Mustang at its own auction for a $500 bid, and Mike's submitted a possessory lien affidavit to the division of vehicles. However, Mike's did not file the required documents with the Riley County clerk pursuant to K.S.A. 8-1107 until after Citifinancial filed its lawsuit. On March 9, 2006, Mike's submitted an application with the division of vehicles to have the car title issued in its name, and on that same date, the division of vehicles issued a certificate of title for the Mustang listing Mike's as the owner.

On April 1, 2006, Mike's sold the Mustang to Aaron Monihen, and Monihen granted KSU Federal Credit Union a security interest in the Mustang pursuant to a security agreement. The record does not reflect the sale price of the Mustang, but the parties later stipulated that the value of the Mustang was $11,000 to $12,000. At the time of the sale, Monihen had no knowledge of the existence of Citifinancial's lien on the Mustang.

Citifinancial later learned about the auction and sale to Monihen by conducting a CARFAX title search on the Mustang. On June 21, 2007, Citifinancial filed a petition with the district court naming Mike's, KSU Federal Credit Union, and Monihen as defendants. In the petition, Citifinancial alleged conversion of its security interest against Mike's and sought to recover the value of its lien in the amount of $8,641.52 plus interest. Citifinancial also asserted a claim against KSU Federal Credit Union and Monihen for *in rem* foreclosure of its security interest in the Mustang.

On January 18, 2008, Citifinancial filed a motion for summary judgment. In the motion, Citifinancial argued that Mike's did not strictly comply with K.S.A. 8-1101 *et seq.*, and Mike's failed to make an adequate attempt to notify Citifinancial of the sale in order to satisfy due process. Citifinancial also alleged that the sale was void because Mike's failed to pay cash for the Mustang at the public auction as required by K.S.A. 8-1105, and Mike's failed to file the required documents with the Riley County clerk pursuant to K.S.A. 8-1107 until nearly 2 years after the auction.

Also, on January 18, 2008, the defendants filed a motion for summary judgment. The defendants asserted that Mike's complied with K.S.A. 8-1101 *et seq.* by lawfully coming into possession of the Mustang in response to the police department's request, by submitting the title verification request to the division of vehicles within 30 days, and by selling the Mustang by public auction after publishing notice of the sale. The defendants denied having any knowledge that the Mustang was titled in Nevada and denied that the Kansas statutes imposed any duty upon Mike's to conduct a title search outside Kansas.

On February 25, 2008, the district court granted summary judgment in favor of Citifinancial on its claim against Mike's. The district court found that Citifinancial did everything possible to protect its security interest in the Mustang. The district court rejected Mike's "narrow interpretation" of K.S.A. 8-1101 *et seq.* that a towing service need only contact the division of vehicles to find the last registered owner of a vehicle and any lienholders. The district court found that under the circumstances Mike's failed to make a reasonable effort to notify Citifinancial of the sale. The district court observed that Mike's could have obtained a CARFAX report to determine the owner of the Mustang and, by doing so, Mike's would have discovered Citifinancial's interest as a lienholder. Accordingly, the district court granted judgment against Mike's for the value of Citifinancial's lien in the amount of $8,641.52 plus interest. By agreement of the parties, the district court dismissed Citifinancial's claims against KSU Federal Credit Union and Monihen with prejudice. Mike's timely appeals.

Mike's claims the district court erred by granting summary judgment in favor of Citifinancial. Mike's argues that it complied with K.S.A. 8-1101 *et seq.* by submitting the title verification request to the division of vehicles and by selling the Mustang at public auction after publishing notice of the sale. According to Mike's, Kansas law only requires a wrecker or towing service to request verification from the division of vehicles of the last registered owner and any lienholders before a vehicle can be sold. Mike's complains that requiring any additional actions not set forth in K.S.A. 8-1101 *et*

*seq.*, such as conducting a state-by-state title search, would be burdensome and unreasonable.

Citifinancial claims that Mike's failed to strictly comply with K.S.A. 8-1101 *et seq.* because the statutes contemplate that notice of a sale must be sent to the owner of the vehicle and any lienholders. Citifinancial also claims that Mike's failed to pay cash for the Mustang at the public auction as required by K.S.A. 8-1105, and Mike's failed to file the required documents with the Riley County clerk pursuant to K.S.A. 8-1107 until nearly 2 years after the Mustang was sold at auction. Furthermore, Citifinancial argues that K.S.A. 8-1101 *et seq.* does not satisfy the requirements of due process of law because the statutory scheme provides no mechanism to notify an out-of-state owner or lienholder of the potential sale of their interest in a vehicle.

We note that the Kansas Motor Carriers Association (KMCA) filed an *amicus* brief and argues that Citifinancial's claim is preempted by federal law under the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 14501 *et seq.* (2000). Specifically, KMCA argues that 49 U.S.C. § 14501(c)(1) provides for express preemption when a state enacts a law related to the price, route, or service of any motor carrier. However, the federal preemption issue was not raised by any party in district court and is not even raised as a point of error in the appellant's brief. Generally, issues not raised before the district court cannot be raised for the first time on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). Also, an *amicus* brief generally may not raise an issue that was not raised by the parties. *Hensley v. Board of Education of Unified School District*, 210 Kan. 858, 864, 504 P.2d 184 (1972). Thus, we decline to address KMCA's federal preemption issue.

The standard of review for summary judgment is well known:

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for

summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " ' [Citations omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

This case involves interpretation of the Kansas statutes pertaining to abandoned vehicles and wrecker or towing services. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

### K.S.A. 8-1101 et seq.

By statutory provision, any law enforcement officer in Kansas may have a motor vehicle towed when left unattended for more than 48 hours or when any unattended motor vehicle interferes with the public highway operations. K.S.A. 2008 Supp. 8-1102(c). The person who provides the wrecker or towing services at the direction of the law enforcement officer acquires a first and prior lien on the vehicle for the value of the service rendered. K.S.A. 2008 Supp. 8-1103(a). If the wrecker or towing service knows the name of the owner of the vehicle, then the wrecker or towing service has 15 days to notify the owner that the vehicle is being held subject to satisfaction of the lien. K.S.A. 2008 Supp. 8-1103(a). Any vehicle remaining in the possession of the wrecker or towing service for more than 30 days may be sold to pay the reasonable towing and storage fees:

"Whenever any person providing wrecker or towing service, as defined by law, while lawfully in possession of a vehicle, at the direction of a law enforcement officer or the owner, renders any service to the owner thereof by the recovery, transportation, protection, storage or safekeeping thereof, a first and prior lien on the vehicle is hereby created in favor of such person rendering such service and the lien shall amount to the full amount and value of the service rendered. The lien may be foreclosed in the manner provided in this act. *If the name of the owner of the vehicle is known to the person in possession of such vehicle, then within 15 days, notice shall be given to the owner that the vehicle is being held subject to satisfaction of the lien.* Any vehicle remaining in the possession of a person providing wrecker or towing service for a period of 30 days after such wrecker or

towing service was provided may be sold to pay the reasonable or agreed charges for such recovery, transportation, protection, storage or safekeeping of such vehicle and personal property therein, the costs of such sale, and the costs of notice to the owner of the vehicle and publication after giving the notices required by this act . . . ." (Emphasis added.) K.S.A. 2008 Supp. 8-1103(a).

Before any vehicle is sold, the wrecker or towing service shall request verification from the division of vehicles of the last registered owner and any lienholders. Notice of sale shall be mailed by certified mail to any such registered owner and any such lienholders and published in a newspaper in the city or county where the sale is advertised to take place:

*"Before any such vehicle and personal property is sold, the person intending to sell such vehicle shall request verification from the division of vehicles of the last registered owner and any lienholders, if any.* Such verification request shall be submitted to the division of vehicles not more than 30 days after such person took possession of the vehicle. *Notice of sale, as provided in this act, shall be mailed by certified mail to any such registered owner and any such lienholders within 10 days after receipt of verification of the last owner and any lienholders, if any. The person intending to sell such vehicle and personal property pursuant to this act shall cause a notice of the time and place of sale, containing a description of the vehicle and personal property, to be published in a newspaper in the county or city where the sale is advertised to take place* . . . . Notices given under this section shall state that if the amount due, together with storage, publication, notice and sale costs, is not paid within 15 days from the date of mailing, the vehicle and personal property will be sold at public auction." (Emphasis added.) K.S.A. 2008 Supp. 8-1104.

All sales must be at public auction and for cash. K.S.A. 8-1105. Additionally, copies of the notices and publications required by the Act, and an affidavit of the person providing wrecker or towing services setting forth the claim and actual expenses of notice, publication, and sale, shall be filed with the clerk of the county in which the sale takes place, and certified copies of such documents shall be received as "presumptive evidence" of the matters therein contained. K.S.A. 8-1107.

### Statutory notice requirement

Mike's is correct that the plain language of K.S.A. 2008 Supp. 8-1104 only requires a wrecker or towing service to request verification from the division of vehicles of the last registered owner

and any lienholders before a vehicle can be sold. We interpret the division of vehicles to mean only the division of vehicles in Kansas. Here, Mike's complied with K.S.A. 2008 Supp. 8-1104 and requested verification from the division of vehicles of the last registered owner of the Mustang and any lienholders on record with the state. Of course, the division of vehicles only has records of vehicles titled in Kansas and the Mustang in question was titled in Nevada.

K.S.A. 2008 Supp. 8-1104 further provides that notice of sale shall be mailed by certified mail to such registered owner and any lienholders within 10 days after receipt of verification from the division of vehicles. But here, Mike's did not mail the notice of sale to either Canady or Citifinancial because they were not the registered owner or lienholder in Kansas. Finally, K.S.A. 2008 Supp. 8-1104 requires the notice of sale to be published in a newspaper in the city or county where the sale takes place, and Mike's satisfied this statutory requirement.

Citifinancial cites *Sells v. Muncie Auto Salvage, Inc.*, No. 97,835, unpublished opinion filed March 21, 2008, and argues that Mike's should have done more than contact the division of vehicles in order to determine the owner of the Mustang and any lienholders. In *Sells*, the plaintiff notified the Kansas City, Missouri, Police Department that a work truck had been stolen from his place of business. On the same day, the Kansas Highway Patrol (KHP) found the truck on a highway in Kansas City, Kansas, where it had been involved in a collision. At the KHP's request, the defendant towed the truck back to its lot in Kansas City, Kansas.

The next day, the defendant sent a vehicle records request to the division of vehicles, which was returned with the notation "no record." Even though the truck had a Missouri license plate, the defendant did not send any records request to the State of Missouri. A few weeks later, the defendant published notice of its intent to sell the truck to satisfy the storage lien. Prior to the sale, the defendant received notice from an insurance company that the truck had been reported stolen. Nevertheless, the defendant proceeded with an auction, and the defendant made a credit bid on the truck to satisfy the storage lien.

About a month after the auction, the plaintiff learned from the KHP that his truck was at the defendant's lot. The plaintiff visited the lot to negotiate the return of the truck, but the defendant ultimately refused to relinquish the truck to the plaintiff. While at the lot, the plaintiff observed his title and registration documents, proof of insurance, and numerous business cards with his name and address located inside the truck.

The plaintiff sued the defendant, and following a bench trial, the district court ordered the defendant to return the truck to the plaintiff and pay damages. On appeal, the defendant argued that it complied with K.S.A. 8-1101 *et seq.* by submitting the title verification request to the division of vehicles and by selling the truck at public auction after publishing notice of the sale. The court rejected the defendant's argument and held that the defendant knew *or should have known* the identity of the owner from the Missouri license plate registered to the plaintiff and from the title and registration documents, proof of insurance, and numerous business cards with the plaintiff's name and address located inside the truck. The court reasoned that a reasonably cautious and prudent person at the time of the tow would have known the owner of the truck simply by looking at these items. Slip op. at 3.

The facts in *Sells* are distinguishable from the present facts. Here, the Mustang did not have any license plates when the police asked Mike's to tow the vehicle. The record is silent as to whether there were any identifying documents inside the Mustang, such as title and registration or proof of insurance. Mike's complied with K.S.A. 2008 Supp. 8-1104 and requested verification from the division of vehicles of the last registered owner and any lienholders on record with the state. Unlike the defendant in *Sells*, there is no reason to believe that Mike's knew or should have known the identity of the owner or any lienholders.

Citifinancial also claims that Mike's failed to pay cash for the Mustang at the public auction as required by K.S.A. 8-1105. Although the record is unclear, it appears that Mike's made a $500 credit bid for the Mustang at the public auction since its lien for storage and towing fees exceeded that amount. Although any purchaser at the public auction other than Mike's would have been

required to pay cash for the Mustang pursuant to K.S.A. 8-1105, Mike's credit bid for the Mustang did not violate the statute. It was unnecessary for Mike's to write a $500 check payable to itself in order to comply with K.S.A. 8-1105.

Citifinancial also argues that the public auction was void because Mike's failed to file the required documents with the Riley County clerk pursuant to K.S.A. 8-1107 until nearly 2 years after the auction. K.S.A. 8-1107 provides that copies of the notices and publications required by the Act, and an affidavit of the person providing wrecker or towing services setting forth the claim and actual expenses of notice, publication, and sale, shall be filed with the clerk of the county in which the sale takes place, and certified copies of such documents shall be received as "presumptive evidence" of the matters therein contained. Citifinancial is correct that Mike's failed to timely comply with the requirements of K.S.A. 8-1107. As a result, Mike's failed to establish "presumptive evidence" that it satisfied the requirements of the act. However, failure to strictly comply with the requirements of K.S.A. 8-1107 does not void the public auction unless Mike's is unable to otherwise establish that it complied with the requirements of the act.

*Due process*

The issue then is whether a wrecker or towing service that complies with the statutory provisions of K.S.A. 8-1101 *et seq.* nevertheless owes a due process obligation to an out-of-state owner and any lienholders to notify them of an intended sale of a vehicle, in addition to the published notice. Citifinancial argued in its summary judgment motion and on appeal that Mike's provided insufficient notice to satisfy due process.

Under constitutional guaranties of due process, any judicial process can be made effective only on sufficient notice to parties concerned. See U.S. Const. amend. XIV; Kan. Const. Bill of Rights, § 18; *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1273, 136 P.3d 457 (2006). For notice to satisfy due process in any proceeding, which is to be accorded finality, the notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity

to present their objections. Without such notice, due process is denied and any resulting judgment rendered is void. 281 Kan. at 1275.

K.S.A. 8-1101 *et seq.* is unique in that the statutory scheme creates a lien in favor of a wrecker or towing service that can be foreclosed without a judgment. However, the statutory scheme provides a state-created self-help remedy that allows one party to take away another party's property interest, and this implicates a party's due process rights. Thus, to avoid a violation of the due process rights of an owner or lienholder whose vehicle has been towed without the owner's knowledge or consent, notice that the wrecker or towing service intends to auction the vehicle must be reasonably calculated, under all the circumstances, to apprise the owner and any lienholders of the sale.

Here, we find it significant that the parties stipulated that the value of the Mustang was $11,000 to $12,000. Mike's lien for towing and storage services amounted to only $870 plus the printing fees for publishing the notice. The value of the Mustang was more than sufficient to satisfy Mike's claim as well as Citifinancial's lien in the amount of $8,641.52. By purchasing the Mustang at its own auction for a $500 bid, Mike's received a substantial windfall for towing and storing the vehicle. At the same time, Citifinancial was deprived of its substantial interest in the vehicle without receiving any prior notice of the sale. Mike's knew that someone owned the Mustang. As the district court noted in its decision, "[e]very vehicle, from the day it rolls off the assembly line, has a registered owner." Under the circumstances, especially given the value of the Mustang, we believe the district court was correct to consider whether Mike's efforts to notify Citifinancial of the sale were reasonably calculated to satisfy due process.

However, we conclude the evidentiary record was insufficient for the district court to resolve the due process issue on summary judgment. In its memorandum in opposition to Mike's motion for summary judgment, Citifinancial attached the affidavit of its assistant vice president, Jon Markwell. Markwell stated that he requested and obtained a CARFAX report on the Mustang on January 10, 2007, based on the make, model, and VIN of the Mustang.

The CARFAX report indicated that the Mustang was titled in Nevada and had a lien on the title. Markwell stated that any individual in possession of the Mustang could have easily made an inquiry with CARFAX and followed up with the Nevada division of vehicles to determine the name of the owner and any lienholders. Based only on Markwell's affidavit, the district judge concluded that "Mike's could have determined the previous owner through CARFAX."

On the other hand, Mike's attached an affidavit from the executive director of the KMCA, Thomas A. Whitaker, to its memorandum in opposition to Citifinancial's motion for summary judgment. In the affidavit, Whitaker stated that to the best of his knowledge and belief there is no government system for performing a nationwide search for the owner of a vehicle, other than conducting a search for stolen vehicles through the National Crime Information Center (NCIC).

Here, the record is silent as to whether Mike's was aware of CARFAX and the record is disputed as to whether Mike's could properly rely on the commercial enterprise in order to conduct a title search. The record is also silent as to whether the Manhattan Police Department had any information about the owner of the Mustang and whether it would have been burdensome to conduct a search for stolen vehicles through the NCIC. The record is also silent as to whether there were any identifying documents inside the Mustang, such as title and registration or proof of insurance. All this evidence would have been relevant for the district court to determine whether Mike's efforts were reasonably calculated, under all the circumstances, to notify Citifinancial of the sale.

Accordingly, we remand the case to the district court for further proceedings. The parties should be allowed to conduct discovery to develop relevant evidence as to whether Mike's efforts to notify Citifinancial of the sale were reasonably calculated to satisfy due process.

Reversed and remanded.