334 So.2d 753 (1976)
Edward BAILEY
v.
SCHOTT AND COMPANY, INC. and Liberty Mutual Insurance Company.
No. 7665.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1976.
Rehearing Denied July 29, 1976.
*754 Dufour, Levy, Marx, Lucas & Osborne, Michael Osborne and Patrick Rankin, New Orleans, for plaintiff-appellant.
Stephen L. Huber, Metairie, for defendants-appellees.
Before GULOTTA, STOULIG and MORIAL, JJ.
GULOTTA, Judge.
Plaintiff appeals from a judgment awarding scheduled workmen's compensation benefits for partial loss of a thumb.[1] It is plaintiff's contention that he is entitled to total and permanent disability benefits for the reasons that: 1) the duties of his preinjury employment require that he work in substantial pain; 2) the injured thumb is susceptible to reinjury; and, 3) plaintiff's ability to compete in the common labor market has been substantially impaired.
The facts are that while working in his employment at Schott and Company on July 16, 1973, plaintiff's left thumb became caught in a meat grinder, causing a severe laceration of the distal phalanges of the thumb, a laceration of the thumb's tendon and nerves and a crushing of the soft part of the thumb at the flexor surface (the surface opposite the nail).
In dismissing plaintiff's suit for total and permanent disability, the trial judge concluded that plaintiff was not entitled to any additional compensation other than the amounts previously paid in accordance with the scheduled benefits for partial loss of a thumb. The record supports this conclusion.

SUBSTANTIAL PAIN
We reject, as did the trial judge, plaintiff's first contention that the injury caused him to work in his preinjury employment in substantial pain. On the date of the accident, July 16, 1973, plaintiff was seen by Dr. Ernest Celli, an industrial surgeon. Six sutures were required to repair the laceration. Between August 9, 1973 and September 20, 1973, Dr. Celli saw plaintiff on four occasions. The doctor testified that flexion in the injured thumb was limited to 15%, as compared to 60% of the right thumb. Dr. Celli indicated also that plaintiff's complaints of numbness at the tip of the thumb and sensitivity to cold would improve with time. Bailey was released to return to work on August 20, 1973. Significantly, the doctor did not testify regarding the degree of pain that plaintiff might suffer while working in his employment.
Subsequent to Bailey's return to work, he continued to experience pain at the tip *755 of the thumb upon touch, restricted motion upon flexion, and lack of sensation in the thumb. Because of these continued complaints, the 53-year old plaintiff, who had been employed at Schott and Company for 28 years, saw Dr. Harold M. Stokes, an orthopedic surgeon, on October 24, 1973. On January 6, 1974, Dr. Stokes surgically removed adhesions surrounding the tendon, excised a large neuroma[2] of the digital nerve and repaired the nerve. According to Dr. Stokes, following the surgery there existed no indication of the formation of another neuroma.
Plaintiff was discharged from the hospital on January 8, 1974. Between January 28, 1974 and April 8, 1974, plaintiff was seen on four additional occasions. On the April 8 examination, there was some limitation of joint motion of the thumb, but according to Dr. Stokes, it was relatively painless. Dr. Stokes recorded no complaint of pain on the April 8 visit, and was told by plaintiff that he had been working with his thumb in a pain-free manner and was doing his job without difficulty. The doctor stated that Bailey no longer had any uncomfortable neuroma sensation in the thumb.
Dr. Joseph P. Licciardi, an orthopedic surgeon, examined plaintiff on one occasion, April 24, 1975. Plaintiff complained of persistent pain and numbness and inability to use his thumb. Although it was Dr. Licciardi's opinion that there existed a neuroma at the site of the injury to the thumb, the doctor did not think that plaintiff was suffering from a severe amount of pain. Dr. Licciardi thought that plaintiff would be "uncomfortable" if he were required to use his hand.
Plaintiff testified that his thumb caused him pain, however, we note that subsequent to the July 16, 1973 accident, plaintiff returned to work about August 20, 1973. He continued working until surgery was performed in January, 1974. Plaintiff returned to work in February, 1974,[3] and remained in his preinjury employment until July, 1974, when he ceased working for reasons unrelated to the thumb injury.
Theodore C. Mumme, plaintiff's supervisor at Schott and Company testified that during the period plaintiff worked following the July, 1973 accident, he was able to perform the same work as before the accident, i.e., weighing meat, without any extra job assistance and without complaint.
Whether an individual is undergoing substantial pain in the performance and duties of his employment is a factual question, dependent upon the circumstances of each case. Bernal v. Employers Commercial Union Insurance Company, 329 So.2d 907 (La.App. 2d Cir. 1976). A claimant will not be considered totally and permanently disabled because he suffers "from some residual pain and discomfort" when he attempts to work following a work-connected accident. The residual pain will be considered disabling only if it is "substantial or appreciable". Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923 (La.App. 3d Cir. 1973). Under the circumstances, we cannot say the trial judge erred in concluding that plaintiff did not suffer substantial pain as a result of the accident.

SUSCEPTIBILITY TO REINJURY We also find no merit to plaintiff's contention that the injury to plaintiff's thumb causes substantial susceptibility to reinjury. Plaintiff simply failed to offer evidence supporting this claim.
In this connection, Dr. Stokes testified that plaintiff had some "protective", in addition *756 to normal, sensation in his thumb. However, it was Dr. Stokes' conclusion that plaintiff could have safely carried on his work. Although Dr. Licciardi testified that he had seen patients with numbness and without pain "drop things", the doctor was responding to a hypothetical question and never testified that plaintiff's injury might cause him to be more susceptible to reinjury at work.

ABILITY TO COMPETE IN LABOR MARKET
Finally, we find no merit to plaintiff's contention that the injury has impaired plaintiff's ability to compete in the common labor market. Dr. Stokes testified that plaintiff had a 25% partial impairment of the thumb. It was this doctor's opinion that plaintiff was not job disabled and that plaintiff demonstrated a capacity to work despite the physical impairment. Even Dr. Licciardi, who concluded that plaintiff's thumb was probably 30% less effective and assessed plaintiff's disability as an approximate 10-15% physical impairment of the person as a whole, did not indicate plaintiff could not work in his preinjury employment.
The fact that plaintiff could still compete in the common labor market is also supported by plaintiff's work record subsequent to the accident. As stated previously, plaintiff informed Dr. Stokes that he had been doing his regular job without difficulty. Mumme testified, that plaintiff continued to work without complaint and without assistance. Following the January, 1974 operation, plaintiff returned in February, 1974, until he left the defendant company in July, 1974, for non-related medical reasons.
Under the circumstances, we find no error in the dismissal of plaintiff's claim for total and permanent disability benefits. The judgment is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 23:1221(4)(a) and (o) reads as follows:

§ 1221. Temporary; permanent, or partial disability; schedule of payments
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * * *
(4) In the following cases, the compensation shall be as follows:
(a) For loss of a thumb, sixty-six and two-thirds per centum of wages during fifty weeks.
* * * * *
(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member."
[2] Scar tissue or tumor of the nerve causing sensitivity to touch.
[3] Bailey testified he returned to work (although in pain) because he had a family to support.