No. 103,938

DEBRA L. MILLER, in her Capacity as the Secretary of Transportation for the State of Kansas, *Appellee*, v. LAWRENCE PREISSER and TRACY CHAMBERS, *Appellants*.

(284 P.3d 290)

357

Opinion filed August 31, 2012.

*David M. Rapp*, of Hinkle, Elkouri Law Firm, L.L.C., of Wichita, argued the cause and was on the brief for appellants.

*Jason B. Prier*, of Orrick and Associates, L.L.P., of Kansas City, argued the cause, and *Patrick R. Watkins*, of the same firm, and *Timothy P. Orrick*, of the same firm, of Overland Park, were with him on the brief for appellee.

*Michael D. Irvin* and *Charles Arthur*, of Manhattan, were on the brief for *amicus curiae* Kansas Farm Bureau.

The opinion of the court was delivered by

LUCKERT, J.: This appeal in an eminent domain action raises questions of law regarding (1) the application of the assemblage doctrine as a theory of valuation, (2) whether a change of traffic patterns is a compensable taking, and (3) whether a court in an eminent domain action has subject matter jurisdiction over a claim that the government's exercise of its police power to regulate traffic was unreasonable.

As to the first issue, the district court ruled the landowners could not present evidence related to the doctrine of assemblage, which is a theory of valuation that allows consideration of the condemned property as an integrated economic unit with an adjacent property.

The district court refused to allow evidence under this doctrine because the two properties did not have a unity of ownership at the time of the takings and because the owner of the adjacent property had already been awarded separate, individual compensation for a similar partial taking. We conclude the district court erred because unity of ownership is not required when a landowner presents the assemblage of two parcels of property solely for the purpose of establishing the highest and best use of the property; rather, it must merely be established that there is a reasonable probability of joinder of the properties, which is a jury question. Nor does it matter that the adjacent property is also condemned. While the landowners of the condemned property in this case cannot seek damages related to the impact on the value of the adjacent property, the district court's order did more than limit damages; it prohibited the landowners from presenting evidence regarding valuation based on use of their property as an integrated economic unit with an adjacent property, which should have been permitted. We, therefore, reverse the district court on this issue and remand the case so evidence related to the assemblage doctrine can be presented to a jury.

In the second issue, the landowners argue the district court erred in determining that a change in the traffic pattern for driving from their condemned property to a nearby highway was not compensable. We affirm the district court on this issue because the condemned property had the same direct access to the abutting roadway before and after the condemnation, and, although there was a change in the traffic pattern, that change is not a compensable loss under our prior caselaw. We, therefore, affirm the district court on this issue.

Finally, we conclude that neither this court nor the district court had subject matter jurisdiction in this eminent domain action to consider the reasonableness of the government's exercise of its police power in regulating traffic flow. If the government's action was unreasonable, it is void, not compensable. Yet, the Kansas Legislature has limited jurisdiction in an eminent domain action to the issue of appropriate compensation for a lawful taking, and neither

the parties nor a court can expand the statutorily defined jurisdiction.

FACTS AND PROCEDURAL BACKGROUND

In 2008, Debra L. Miller, in her capacity as the Secretary of Transportation for the State of Kansas (KDOT), filed an eminent domain action seeking temporary and permanent easements on property, referred to as Tract 47, owned by Lawrence Preisser and Tracy Chambers (Landowners). After the appraisers appointed in the eminent domain action awarded the Landowners $120,000 as damages, KDOT appealed under K.S.A. 26-508 in the district court and requested a trial de novo on the damages issue. Before trial, KDOT filed two motions, seeking exclusion of evidence relating to two potential damage theories. The district court granted KDOT's motions. Now, the Landowners appeal the award of damages to this court, arguing the district court erred in granting KDOT's pretrial motions. This court has jurisdiction pursuant to K.S.A. 26-504 (direct appeal to Supreme Court of any final order under the Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.*).

The exercise of eminent domain that resulted in this case was related to KDOT's improvement of U.S. Highway 54/400 in Pratt County, Kansas (Highway Project). The Highway Project converted Highway 54/400 to a controlled access highway. To accomplish this, KDOT eliminated the direct connection of private driveways and some public roads to the highway and eliminated "at-grade intersections." In place of those multiple intersections, at least in the immediate area of the property at issue in this appeal, the only access to Highway 54/400 was through "grade-separated interchanges" that were generally located several miles apart. The stated purpose of converting this section of highway to a controlled access roadway was to eliminate " 'conflict points,' *i.e.*, points where turning movements intersect on-coming traffic." This elimination of conflict points was "intended to reduce accident rates and severity, and allow for the safe movement of increased traffic volumes at greater speed."

Before the Highway Project, Tract 47 did not have direct access to Highway 54/400. Rather, Tract 47 had a driveway that connected

to 130th Avenue. 130th Avenue then intersected with Highway 54/400 approximately .2 of a mile from Tract 47's driveway. From there, a driver could travel either east or west on Highway 54/400.

After the Highway Project's completion, Tract 47's driveway still accessed 130th Avenue. But, 130th Avenue no longer intersects with Highway 54/400. Consequently, a driver leaving Tract 47 would have to take several roads, including a new connector road built in the Highway Project, to get to Highway 54/400. Depending on whether the driver wants to travel east or west on Highway 54/400, the driver has to drive either approximately 6.8 miles or 3.8 miles, instead of just .2 miles.

The Landowners refer to the new paths of access to U.S. Highway 54/400 as "tortuous and circuitous." They argue the economic value of Tract 47 at its highest and best use as a farm headquarters is diminished because of the removal of easy access to Highway 54/400. The Landowners further argue this highest and best use required consideration of Tract 47 as an economic unit with an adjacent property that was condemned for easements, Tract 38.

*Relationship of Tract 47 and Tract 38*

Tract 47 is a 2.77-acre parcel of land that was notched out of the southeast corner of a piece of property that had been under single ownership until a few years before the eminent domain action. When combined, the two tracts were just slightly less than 80 acres; this combined property has been referred to in this case as the "Short 80." The larger of the two tracts of property, which consisted of 75.5 acres, is Tract 38. At the time of the eminent domain action, Tract 38 was owned by Preisser individually, and the two tracts were used together to form Preisser Farms.

Preisser and his then-wife, Karen, purchased the Short 80 in 1978 as a single unit. Preisser asserts that the properties' ease of access to Highway 54/400 was a factor in their purchasing decision. The northern border of the Short 80, which later became the northern border of Tract 38, ran parallel to Highway 54/400, and there were two access points from the property to the highway. The eastern boundary of the Short 80 and, later, the eastern boundary of both Tracts 38 and 47, paralleled 130th Avenue.

Over time, the Preissers improved the Short 80 with a single-family residence which doubled as the farm operations headquarters. They also built several outbuildings and made other improvements, including a large metal building for storage of farm machinery, a smaller metal building used for maintenance and repairs, a large storage tank for vehicle and equipment fuel, a large storage tank for anhydrous ammonia used in fertilizing crops, a large grain bin for storage of harvested crops before they are taken to the market, and an irrigation well and related irrigation system. Tract 47 contained the residence, two outbuildings, and the large grain bin.

In 2000, the Preissers divorced, and as part of the divorce settlement, Tract 47 was carved out and set aside to Karen for her occupancy as a residence for a period of 3 years. Then, in 2003, Preisser and Chambers borrowed a sum of money to pay the amount owed to Karen as part of the property settlement in the divorce and secured possession of Tract 47. As part of the loan transaction, a deed was executed, transferring the title of Tract 47 to Preisser and Chambers. This was done to limit the extent of the mortgage lien to Tract 47, leaving the balance of the Short 80, Tract 38, unaffected by the lien. As a result of the divorce proceedings and the division of the Short 80, at the time of the eminent domain action in 2008, the two tracts fell under different ownership. Preisser owned Tract 38 and Preisser and Chambers owned Tract 47. Up to the time of the eminent domain action, Tract 47 continued to serve as part of the farm operations and custom harvesting headquarters.

### Eminent Domain Action

The eminent domain action included both tracts of the Short 80. KDOT obtained easements on Tract 38, the larger and northern tract, which closed the two direct access points to Highway 54/400. The court-appointed appraisers awarded Preisser $69,495 as compensation. Neither Preisser nor KDOT appealed this award.

In the eminent domain action related to Tract 47, appraisers awarded the Landowners $120,000. They calculated the fair mar-

ket value of the property before the taking at $240,000 and half that amount after the taking.

KDOT appealed this award. In the course of pursuing its challenge of the appraisers' award, KDOT filed pretrial motions in which it sought to clarify that the only property at issue was Tract 47. KDOT sought a ruling striking any of the Landowners' claims for compensation based on an assemblage theory where the Landowners would claim that the two tracts—Tract 47 and Tract 38—should be valued under the doctrine of assemblage as an economic unit. In a second motion, KDOT sought to strike any of the Landowners' claims for compensation relating to loss of access to Highway 54/400 or regulation of traffic flow. The parties submitted affidavits, depositions, studies, and expert reports in support of their positions on these issues.

Ruling on the motions, the district court separated the second motion into two issues and ordered that the Landowners (1) were prohibited from presenting evidence pertaining to the valuation of Tract 47 as part of an economic unit under the assemblage doctrine, (2) were not entitled to compensation for loss of access, and (3) were not entitled to compensation for loss in market value due to the regulation of traffic flow because KDOT's exercise of police power was reasonable.

According to the journal entry of judgment, in light of the district court's rulings on KDOT's pretrial motions, the parties agreed to forego trial and stipulated to just compensation in the amount of $11,500, contingent upon this court's appellate review and affirmation of the district court's ruling. Further, "[i]n the event the Kansas Supreme Court reverses or remands the case on any of the aforementioned issues, the parties stipulate this journal entry of judgment will be null and void and the parties will be entitled to a trial in accordance with K.S.A. 26-508." Because KDOT had already paid compensation in the amount of $120,000, the district court ordered the Landowners to reimburse KDOT the difference, which was $108,500 plus interest ($116,679.86). After the Landowners filed a motion seeking a stay of execution pending the outcome of this appeal, the parties agreed on the amount and posting of a supersedeas bond.

On appeal, the Landowners raise two issues: (1) Did the district court err in denying the Landowners an opportunity to present evidence as to the most advantageous use of Tract 47, which was as an economic unit with Tract 38? and (2) Did the district court err in determining that the change in the traffic pattern from Tract 47 to Highway 54/400 was not compensable? The Landowners present subissues related to the change of traffic pattern, one of which we separate for analysis. In this subissue, the Landowners argue KDOT's exercise of police power was unreasonable. We conclude we do not have subject matter jurisdiction over this subissue.

### ISSUE 1: DOCTRINE OF ASSEMBLAGE

The first issue on appeal relates to application of the "doctrine of assemblage." See, *e.g.*, *Sakon v. Glastonbury*, 111 Conn. App. 242, 249, 958 A.2d 801 (2008), *cert. denied* 290 Conn. 916 (2009); *Clarmar v. Milwaukee Redevelopment*, 129 Wis. 2d 81, 86, 383 N.W.2d 890 (1986). A leading authority explains the doctrine as follows:

"The doctrine of assemblage applies when the highest and best use of separate parcels involves their integrated use with lands of another. Pursuant to this doctrine, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable. If applicable, this doctrine allows a property owner to introduce evidence showing that the fair market value of the owner's real estate is enhanced by its probable assemblage with other parcels." 4 Nichols on Eminent Domain § 13.01[20], p. 13-36 (3d ed. 2003).

Citing this and other authorities, the Landowners argue that the district court abused its discretion in ruling that the Landowners could not use the doctrine because Tracts 38 and 47 did not share unity of ownership at the time of the partial taking and because compensation had already been awarded to Preisser separately for Tract 38. The Landowners assert they proffered evidence showing that joinder of the parcels was reasonably practicable and, in fact, eventually accomplished.

Our review of this issue begins with the recognition that a district court generally has "broad discretion in determining what evidence will be allowed in an eminent domain proceeding." *U.S.D. No. 464*

*v. Porter*, 234 Kan. 690, 694, 676 P.2d 84 (1984). As a general rule, "any competent evidence bearing upon market value generally is admissible including those factors that a hypothetical buyer and seller would consider in setting a purchase price for the property." *City of Wichita v. Eisenring*, 269 Kan. 767, 773, 7 P.3d 1248 (2000) (citing 5 Nichols on Eminent Domain § 18.05[1] [3d ed. 1997]).

Nevertheless, a district court's exercise of discretion in admitting and excluding evidence is circumscribed by governing law. See *State v. Gonzalez*, 290 Kan. 747, 755, 234 P.3d 1 (2010) (even under the deferential abuse of discretion standard of review, an appellate court has unlimited review of legal conclusions upon which a district court's discretionary decision is based). "This is no less true in the condemnation context than in any other litigation. [Citation omitted.]" *Miller v. Glacier Development Co.*, 284 Kan. 476, 492, 161 P.3d 730 (2007), *cert. denied* 552 U.S. 1258 (2008) (*Glacier I*) (citing *Mooney v. City of Overland Park*, 283 Kan. 617, 619-20, 153 P.3d 1252 [2007]).

It is one of these limitations on the scope of admissible evidence that is at issue in this appeal because the ultimate question is whether evidence relating to the assemblage doctrine applied under the circumstances of this case. When, as here, a district court's basis for the exclusion of evidence is a legal basis, a question of law is presented. Questions of law are subject to de novo appellate review. See *In re M.F.*, 290 Kan. 142, 150, 225 P.3d 1177 (2010) (citing *State v. Moore*, 287 Kan. 121, 135, 194 P.3d 18 [2008]); see also *State v. Magallanez*, 290 Kan. 906, 921, 235 P.3d 460 (2010) (when adequacy of the legal basis of district court's decision on admission or exclusion of evidence is questioned, the decision is reviewed de novo); *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006) (adequacy of legal basis for judge's admission of evidence reviewed de novo).

Therefore, we review de novo the question of whether the assemblage doctrine was an available legal theory for establishing the value of Tract 47. In doing so, it is helpful to understand how the theory fits into the issues in an eminent domain action.

When an appraisers' award is appealed in an eminent domain action, "[t]he only issue to be determined therein shall be the com-

pensation required by K.S.A. 26-513." K.S.A. 2011 Supp. 26-508. The compensation statute K.S.A. 26-513(a) first states the general principle that "[p]rivate property shall not be taken or damaged for public use without just compensation." See *City of Mission Hills v. Sexton*, 284 Kan. 414, 422, 160 P.3d 812 (2007) (indicating the issue in an eminent domain action is the condemned property's fair market value). K.S.A. 26-513(c) also addresses the standard for determining appropriate compensation when there has been a partial taking, such as occurred in this case, by stating:

"If only a part of a tract of land or interest is taken, the compensation and measure of damages is the difference between the fair market value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking."

"Fair market value" is defined in K.S.A. 26-513(e) using the commonly understood definition: "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion."

When the determination of fair market value is made in an eminent domain action, an owner of real property is entitled to have the highest and best use of the property considered. See *Olson v. United States*, 292 U.S. 246, 255, 54 S. Ct. 104, 78 L. Ed. 1236 (1934); see also *Board of Johnson County Comm'rs v. Smith*, 280 Kan. 588, 597, 123 P.3d 1271 (2005) (referencing " 'the most profitable use' " and " '[t]he most advantageous use' "). Accordingly, K.S.A. 26-513(d)(1), which provides a "nonexclusive list" of factors that "shall be considered" to determine the amount of compensation and damage, lists as one factor the "most advantageous use to which the property is reasonably adaptable." Additional factors indirectly relate to the concept of highest and best use, including consideration of access, of productivity and convenience, and, more directly, that "the property could be or had been adapted to a use which was profitably carried on." K.S.A. 26-513(d)(2), (4), (13). The "factors are not to be considered as separate items of damages, but are to be considered only as they affect the total

compensation and damage." K.S.A. 26-513(d). Because the list is nonexclusive, "any competent evidence bearing upon market value generally is admissible including those factors that a hypothetical buyer and seller would consider in setting a purchase price for the property." *City of Wichita v. Eisenring*, 269 Kan. 767, 773, 7 P.3d 1248 (2000) (citing 5 Nichols on Eminent Domain § 18.05[1]).

The Landowners argue that two interrelated statutory factors affected the total compensation due for the partial taking of Tract 47—the "most advantageous use to which the property is reasonably adaptable" and "the property could be or had been adapted to a use which was profitably carried on." K.S.A. 26-513(d)(1), (13). Specifically, the Landowners argue that Tract 47's integrated operation with Tract 38 was its most advantageous use. They point out that these two parcels had been used in conjunction with each other for more than 30 years and, thus, Tract 47 could be or had been adapted to a profitable use. The Landowners' expert submitted an affidavit in which he opined the most advantageous use of Tract 47 was its historic use "as the headquarters of Preisser's farming and custom cutting operation."

### District Court's Findings

In excluding evidence pertaining to the assemblage doctrine, the district court made the following findings in its December 21, 2009, order:

"38. The Court finds that at the time of the taking, there was a difference in ownership of the two parcels comprising what has been referred to as the Short 80. The court further finds that the difference in ownership was attributable solely to the action of and for the purposes of [the Landowners].

"39. The Court concludes that [the Landowners] should not be permitted to make a claim that the Short 80 was an economic unit and the most advantageous use to be made of the Subject Property is as part of that economic unit.

"40. The Court determines that [the Landowners] cannot at this stage of the proceedings, present evidence that the properties can be considered as an economic unit and the Subject Property valued accordingly. If the parcels were to be put back together in the same ownership, *that reunification of title should have occurred before the initial condemnation or there should have been an appeal as to Tract 38, which there was not.*" (Emphasis added.)

• *Unity of Ownership*

The first error, the Landowners argue, was the district court's conclusion that the Landowners could not present evidence related to the assemblage doctrine because the two parcels—Tract 47 and Tract 38—did not share unity of ownership at the time the eminent domain action began. As the Landowners correctly point out in their appellate brief, in Kansas and a majority of other jurisdictions, this fact alone does not prohibit the consideration of assemblage evidence.

Rather than requiring a current unity of ownership, most courts hold that assemblage is a proper consideration in determining fair market value in condemnation matters if the owner of the condemned property shows there is a reasonable probability the claimed assemblage can be accomplished in the reasonably near future. The burden of proof on this matter is on the owner. See *United States v. Powelson*, 319 U.S. 266, 273-74, 63 S. Ct. 1047, 87 L. Ed. 1390 (1943); *Cain v. City of Topeka*, 4 Kan. App. 2d 192, Syl. ¶ 1, 603 P.2d 1031 (1979), *rev. denied* 227 Kan. 927 (1980); 4 Nichols on Eminent Domain § 13.01[20], p. 13-36 (3d ed. 2003). Thus, when there is evidence supporting a reasonable probability that the properties can be joined, evidence of the use of the condemned property as an economic unit with other parcels presents a fact question for the jury to determine and can be admitted to show the condemned property's highest and best use, regardless of whether the owner of the condemned property owns the other parcels. See, *e.g.*, *Cain*, 4 Kan. App. 2d at 193-94; *State v. Long*, 344 So. 2d 754, 759-60 (Ala. 1977); *City of Indianapolis v. Heeter, et al.*, 171 Ind. App. 119, 126-27, 355 N.E.2d 429 (1976); *United Gas Pipe Line Co. v. Becnel*, 417 So. 2d 1198, 1202-04 (La. App.), *rev. denied* 421 So. 2d 1124 (1982); *County of Monmouth v. Hilton*, 334 N.J. Super. 582, 590-92, 760 A.2d 786 (2000), *rev. denied* 167 N.J. 633 (2001).

The Landowners rely on *Cain* for support of their contention that the district court should have allowed them to present evidence of an economic unit for purposes of placing a value on Tract 47, despite the fact that Tracts 47 and 38 did not share unity of

ownership at the time of the takings. In *Cain*, an eminent domain action was brought by the City of Topeka, and the Court of Appeals affirmed the district court's admission of evidence offered by Cain, a landowner, supporting his contention that the highest and best use of his property on the date of the taking was its potential assemblage with adjacent tracts of land for use as a motel site. Cain testified that he had purchased the property with the intention of assembling the entire block for development. For Cain's condemned property to have been used for such purpose, however, he would have had to acquire the adjacent tracts. *Cain*, 4 Kan. App. 2d at 193-94.

The City argued on appeal that the valuation evidence, premised on the joinder of the tracts, was speculative. The Court of Appeals disagreed, stating:

"Parties to an eminent domain proceeding are entitled to adopt their own theories as to the highest and best use of the condemned land. *Humphries v. State Highway Commission*, 201 Kan. 544, 549, 442 P.2d 475 (1968). The fact that the land has been used for one purpose only does not prevent showing its availability and value for other uses provided the other uses are so reasonably probable as to have an effect on the present market value of the land. *Humphries v. State Highway Commission*, 201 Kan. at 549-550; *Regnier Builders, Inc. v. Linwood School District No. 1*, 189 Kan. 360, 362, 369 P.2d 316 (1962). As stated in 4 Nichols on Eminent Domain, § 12.3142(2), pp. 12-389-390 (3d ed. 1978):

'In order to merit consideration the potential uses must be so reasonably probable as to motivate a prospective purchaser in his desire to acquire the property. Purely imaginative or speculative values are excluded.'

. . . .

"The rule stated in 4 Nichols on Eminent Domain, § 12-3142(1), p. 12-329 (3d ed. 1978), is:

'Where the highest and best use of separate parcels involves their integrated use with the lands of another, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable.'

Other jurisdictions have recently reached similar conclusions. *State v. Long*, 334 So. 2d 754, 759-760 (Ala. 1977); *Meakin v. Steveland, Inc.*, 68 Cal. App. 3d 490, 502, 137 Cal. Rptr. 359 (1977) [stating 'where the adaptability for a use depends upon the land being used in combination with lands belonging to other persons, such unitary use may be shown if the possibility of such combination is so great as to have a definite effect in enhancing the market value of the property']; *City of Indianapolis, Dept. of Met. Dev. v. Heeter*, [171 Ind. App. 119], 355 N.E.2d 429, 434 (1976) ['When the value of the land taken is enhanced by uses to which

the condemned property might be adapted, the owner is entitled to the market value as so enhanced.'] We find the rule logical and adopt it." *Cain*, 4 Kan. App. 2d at 193.

In finding no error in the admission of evidence, the Court of Appeals noted that Cain testified a "zoning change to facilitate and allow the desired development was a reasonable probability." *Cain*, 4 Kan. App. 2d at 194. Cain's testimony further indicated the area had been under threat of condemnation for a civic center, and this was a reason for not previously purchasing the adjoining tracts. In addition to Cain's testimony, all appraisal witnesses, including the City's, supported the use of the assemblage doctrine, testifying "in varying degrees that assemblage of the entire block for development would have to be considered to arrive at a conclusion as to highest and best use." *Cain*, 4 Kan. App. 2d at 194.

KDOT attempts to distinguish *Cain* and argues that "the lack of any potential unity of title to Tract 38 and the Subject Property is fatal to the assemblage argument advanced by Preisser and Chambers." This assertion is puzzling in light of the record. True, the ownership of Tract 47 was purposefully different from the ownership of Tract 38 at the time of the takings because of Preisser's divorce settlement and his intent to "limit the extent of the mortgage lien" to impact only Tract 47, rather than the entire Short 80. However, as pointed out by the Landowners, although the two parcels had different owners when the eminent domain action began, before the district court ruled on KDOT's motions, the Landowners proffered evidence indicating a reasonable probability that title to the parcels could be unified. Then, before the final order was entered by the district court, Preisser proffered evidence that he would testify that the parcels *were* unified after the commencement of the eminent domain action—at some point before the pretrial hearing, the title to Tract 38 was changed to include both Preisser and Chambers, the same owners of Tract 47.

As such, the Landowners established that there was a question of fact regarding whether the unity of ownership was reasonably probable. The Landowners should have been able to present this question of fact to a jury. See PIK Civ. 4th 131.05 (defining fair market value). Hence, the district court erred in relying on the lack

of unity of ownership when ruling the Landowners could not present evidence that Tract 47's highest and best use was as an assembled, integrated economic unit with Tract 38.

• *The Adjoining Parcel Had Already Been Valued Separately*

That leaves the question of whether the district court correctly ruled that the fact Preisser had been compensated for the damage to Tract 38 meant there would be a duplicative award that prevented the Landowners from being able to present this evidence.

In defending this ruling, KDOT argues that *Cain* is distinguishable because the Landowners, or at least Preisser as owner of one parcel and coowner of the other, seek compensation under two mutually exclusive approaches—valuation of separate parcels by accepting compensation for the separate valuation of damages to Tract 38 and valuation of assembled parcels by requesting that the valuation of damages to Tract 47 include its joint use with Tract 38. Essentially, KDOT asserts that permitting evidence of separate valuation on the one hand and evidence of assemblage on the other would result in a windfall to Preisser because he would receive duplicative compensation for damages to Tract 38. As will be explained below, taking two approaches to the valuation does not lead to duplicative results if a jury is properly instructed.

KDOT cites two Kansas cases—*Hogue v. Kansas Power & Light Co.*, 212 Kan. 339, 510 P.2d 1308 (1973), and *McIntyre v. Board of County Comm'rs of Doniphan County*, 168 Kan. 115, 211 P.2d 59 (1949)—in support of its argument that unity of ownership was essential to avoid any recovery of duplicative damages, that is, compensation for the partial taking of Tract 38 and compensation for incidental damage to Tract 47 due to the partial taking of Tract 38. But both *Hogue* and *McIntyre* relate to severance damages, not highest and best use valuation. These are different concepts that must be separated in our analysis.

K.S.A. 26-513(d)(6) indicates "[s]everance or division of a tract, whether the severance is initial or is in aggravation of a previous severance" is a factor, like the other nonexclusive factors in the statute, that "shall be considered if such factor [is] shown to exist." K.S.A. 26-513(d). Severance damages are inherently included in

partial takings in Kansas, such as cases involving the taking of easements, where "the compensation and measure of damages is the difference between the fair market value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking." K.S.A. 26-513(c).

It is undisputed that the Landowners are entitled to severance damages to Tract 47 for the severance of the easement from the rest of the property. But KDOT's focus is on whether the Landowners can claim damages to the adjoining tract because of the severance. Relying on *Hogue* and *McIntyre*, KDOT asserts evidence of the assembled economic unit was properly excluded.

In *Hogue*, a power line easement was taken across Don Hogue's 410-acre tract. The court ruled Hogue was not entitled to compensation for severance damages caused to a smaller tract owned by Hogue and his wife, Fern, as joint tenants because the easement did not touch the smaller tract and there was not a unity of ownership. *Hogue*, 212 Kan. at 342-43. Similarly, in *McIntyre*, the court ruled T.W. McIntyre could not recover severance damages to his property because of the taking of part of an adjoining property that was owned by his wife, Ruby, because there was not a unity of ownership. *McIntyre*, 168 Kan. at 121. As KDOT asserts, these cases follow the general rule that in order to allow severance damages, where a portion of a parcel or parcels of land claimed as a single unit is taken by condemnation, "there must be unity of ownership between the part taken and the remaining part." *Hogue*, 212 Kan. 339, Syl. ¶ 1; see *McIntyre*, 168 Kan. at 119 (tracts of land held by different titles, vested in different persons, cannot be considered as a whole in awarding severance damages, where it is claimed that one is incidentally injured by the taking of the other for public use).

Consequently, under these cases, the Landowners cannot make a claim for damages to Tract 47 because of the closure of the two access points to Highway 54/400 that were located on Tract 38. Likewise, the Landowners cannot make a claim for damages to Tract 38 because of the easements KDOT obtained on Tract 47. See *McIntyre*, 168 Kan. at 120 (holding "one owner is not entitled

to recover compensation for land taken from him because of alleged damage resulting to that portion of his land remaining on account of the taking of land belonging to another even though, as under the facts of this case, the two tracts had been farmed and operated as one unit").

But the district court's order did more than limit the Landowners' recovery for those types of damages. The district court refused to allow the Landowners to establish that the highest and best use of Tract 47 is when it is assembled with Tract 38 as an economic unit and used as a farming operations headquarters. As other courts have recognized, the restriction on severance damages does not mean the integrated use evidence cannot be introduced for the purpose of valuation—establishing the highest and best use—even if the adjacent property is owned by a different person. One court explained:

"Although joinder is a consideration in valuating the condemned property and the damages to the remaining parcels, the possibility of joinder has no bearing on the propriety of awarding severance damages to the remaining parcels. [Citation omitted.] Thus, even where severance damages to a remaining parcel may not be appropriate, the possibility of joinder may still be a proper consideration in the valuation of the property taken. [Citation omitted.]" *M & R Investment Co., Inc. v. State Dep't Transp.*, 103 Nev. 445, 451-52, 744 P.2d 531 (1987).

Evidence of the impact of a reasonably probable prospective use on the question of highest and best use is allowed because "it would be unjust to allow the Government to use 'salami tactics' to reduce the amount of one property owner's compensation by first acquiring an adjoining piece of property or another interest in the same property from another owner." *Almota Farmers Elevator & Whse. Co. v. United States*, 409 U.S. 470, 480, 93 S. Ct. 791, 35 L. Ed. 2d 1 (1973) (Powell and Douglas, JJ., concurring). Hence, the unavailability of an adjacent parcel due to its prior or separate condemnation "should not be dispositive of whether assemblage is reasonably probable." 4 Nichols on Eminent Domain § 13.01[20], p. 13-37 (3d ed. 2002).

Consequently, the Landowners' evidence is admissible to the extent allowed in *Cain*, where it was not argued that the owner of the subject property was entitled to compensation for damages

caused to adjoining property; rather, it was argued that the value of the subject property *was enhanced* by its use in connection with adjoining property. The concern that this will result in duplicative compensation can be ameliorated through appropriate instructions to the appraisers, cross-examination of experts and other witnesses, and instructions to the jury. Specifically, the jury can be instructed that the compensation must be limited to the loss in fair market value of Tract 47 and that any diminution in value of Tract 38 is not a matter for its consideration. This concept is illustrated in the decision of *Crist v. Iowa State Hgwy. Comm.*, 255 Iowa 615, 123 N.W.2d 424 (1963).

*Crist* involved the valuation of separate parcels in an eminent domain action. The state highway commission condemned Tract S, which was owned jointly by Owen and Ruth Crist. Immediately to the west of Tract S, but separated from it by an alley shown to be closed or impassable, were Tract P and Tract B, which were owned by Owen Crist individually and condemned by the state highway commission in separate proceedings. There was a building on Tract B and all three parcels were used by Owen in conducting an auto body service business—Tract B was used in the rebuilding of wrecks and Tract P and Tract S were used for storage.

The appeal to the Iowa Supreme Court directly concerned only Tract S, and one issue pertained to whether the district court erred in permitting evidence of the value of Tract S as used in connection with Tract B and Tract P. The *Crist* court upheld the introduction of such evidence and rejected the contention that separate valuations were required because the ownership of the three tracts was not identical. The court distinguished this situation from the impermissible situation where the owner of one tract tries to claim damages based on the government's acquisition of adjacent tracts of others, stating:

"No damages to tracts B and P, or either of them, were considered or allowed. All that was done was to permit the use of S in connection with B and P to be shown, as affecting the reasonable market value of S. The jury was told that no damages to B and P should be allowed." *Crist*, 255 Iowa at 619.

The same rationale applies in this case. The fact that Tracts 38 and 47 were held under different ownership did not legally bar the

Landowners from presenting evidence showing that the most advantageous use of the subject property, Tract 47, was its assemblage with Tract 38. Moreover, the fact that Tract 38 was separately condemned and its owner was previously compensated for damages should have had no bearing on the consideration of whether the use of Tract 47 in connection with Tract 38 enhanced the value of Tract 47. The damages to Tract 38 are not to be considered in the calculation of the fair market value of Tract 47, and, therefore, evidence of an assemblage will not produce a windfall to Preisser. As illustrated by *Crist*, the jury can be instructed so that duplicative damages are not awarded.

Consequently, we conclude the district court erred in its legal basis for excluding the valuation evidence and, thus, abused its discretion. Because the Landowners had a right to present evidence of the highest and best use of Tract 47 as an economic unit with Tract 38, we reverse the district court's ruling and remand.

### ISSUE 2: DAMAGES FOR LOSS OF HIGHWAY ACCESS

Next, the Landowners take issue with changes made by KDOT to their property's access to and from Highway 54/400. Specifically, the Landowners argue (1) there was a compensable taking when they suffered loss of highway access and (2) there was a compensable taking when KDOT unreasonably altered the traffic flow to and from their property. The Landowners comingle two distinct issues—right of access and regulation of traffic flow. We will untangle those two issues, as did the district court.

*Distinction Between "Right of Access" and "Regulation of Traffic Flow"*

In several recent cases, this court has clarified that that there is a "significant distinction between 'right of access' and 'regulation of traffic flow.' " *City of Wichita v. McDonald's Corp.*, 266 Kan. 708, 718, 971 P.2d 1189 (1999).

The " 'right of access' is traditionally defined as an abutting landowner's common-law right of access from the landowner's property to abutting public roads. Such a right is the right to reasonable, but not unlimited, access to existing and adjacent public roads."

*McDonald's Corp.*, 266 Kan. at 718 (citing *Brock v. State Highway Commission*, 195 Kan. 361, 370, 404 P.2d 934 [1965]); see *Frick v. City of Salina*, 290 Kan. 869, 880-81, 235 P.3d 1211 (2010) (same); *Korytkowski v. City of Ottawa*, 283 Kan. 122, 129, 152 P.3d 53 (2007) (same). "When the government actually blocks or takes away *existing access* to and from property, the landowner is generally entitled to compensation." *Frick*, 290 Kan. at 880-81; see K.S.A. 26-513(d)(15) (provides for compensation under the Kansas Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.* for damages for "loss of private roads or passageways and the cost of replacing them with private roads or passageways of like quality, to the extent that such loss affects the value of the property remaining"); *McDonald's Corp.*, 266 Kan. at 722 ("We hold, based on case law developed since the passage of K.S.A. 26-513, 'access to the property remaining' as used in K.S.A. 26-513[d][2] refers to a 'right of access' and not changes in traffic flow."); *Kohn Enterprises, Inc. v. City of Overland Park*, 221 Kan. 230, 236-37, 559 P.2d 771 (1977) (upholding finding of damages for reduction in property value based on elimination of access point to abutting highway); *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, Syl. ¶ 4, 397, 524 P.2d 1165 (1974) (landowner compensated for diminution of value when one entrance to business from abutting highway was permanently closed).

"Regulation of traffic flow" or "circuitous route" as it is called by the Landowners is an entirely separate concept. An abutting owner has no right to the continuation of a flow of traffic from nearby highways to the owner's property. "Regulation of traffic flow," which has also been referred to as "restricted access," is an exercise of the government's police power that must have been reasonable. *Korytkowski*, 283 Kan. at 129; see *McDonald's Corp.*, 266 Kan. at 718-19; *Eberth v. Carlson*, 266 Kan. 726, 734-36, 971 P.2d 1182 (1999); *Teachers Insurance & Annuity Ass'n of America v. City of Wichita*, 221 Kan. 325, 335, 559 P.2d 347 (1977); *Kohn Enterprises*, 221 Kan. at 232; *Ray v. State Highway Commission*, 196 Kan. 13, 18-20, 410 P.2d 278, *cert. denied* 385 U.S. 820 (1966). In this situation, there is no taking and thus no compensable damages.

As we will discuss in more detail, the distinction is between *direct* access to *abutting* roadways, which creates a right of access that is compensable in an eminent domain action, and *indirect* access to a *nearby* roadway, which relates to a regulation of traffic flow that is not compensable in an eminent domain action. The district court recognized these distinctions in making the following findings about the Landowners' "right of access" claim:

"41.  The Court determines that Defendants' private right of access does not encompass nearby connection points of abutting roads as claimed by Defendants.

"42.  The Court determines that Plaintiff's motion as to loss of market value as a result of the change in access is controlled by the Kansas Supreme Court's decision in the case of *City of Wichita v. McDonald's Corp.*[, 266 Kan. 708.] It is not controlled by the case of *Teachers Ins. Annuity Ass'n v. the City of Wichita*[, 221 Kan. 325,] which is cited by Defendants in support of their opposition to Plaintiff's motion. This is not a direct access case, as the access to the Subject Property was from 130th Avenue in the before condition and will be from 130th Avenue in the after condition. Plaintiff's project has not changed Defendants' direct access to 130th Avenue."

Accordingly, in the district court's journal entry of judgment, it reiterated that "[the Landowners] will not be permitted to claim loss of market value suffered by the Subject Property as a result of taking direct access to US Highway 54, as the Subject Property had no direct access to US Highway 54."

On appeal, our review of the district court's legal conclusion that there was no compensable taking is a question of law, over which this court exercises an unlimited standard of review. *Eberth*, 266 Kan. at 731; *Deisher v. Kansas Dept. of Transportation*, 264 Kan. 762, 772, 958 P.2d 656 (1998), *superseded by statute on other grounds as stated in Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 215 P.3d 561 (2009).

The Landowners do not dispute that this is the applicable standard of review; they do not challenge the factual basis for the district court's ruling—that Tract 47 never had direct access to Highway 54/400 and only had direct access to 130th Avenue. Nevertheless, the Landowners attempt to circumvent the "right of access" concept by arguing that the term encompasses not only access to an abutting road but any change in access to the entire "public road system." The Landowners rely on *Teachers Insurance*,

221 Kan. 325; *City of Shawnee v. Webb*, 236 Kan. 504, 694 P.2d 896 (1985); and *Kohn Enterprises*, 221 Kan. 230.

In *Teachers Insurance*, landowners claimed to have been damaged both by loss of access and changes in traffic flow when the City of Wichita moved U.S. Highway 54 (Kellogg) altogether. Before the changes, the landowners directly abutted Kellogg and had direct access to it. When the highway move was completed, the abutting landowners lost direct access and were left with only a "tortuous and circuitous route" to Kellogg. *Teachers Insurance*, 221 Kan. at 328. Motorists had to travel between 1.34 to 2 additional miles to reach the landowner's property. The City stipulated that travel to and from the property was not practical, and the landowners were compensated. These facts are unlike the circumstances of this case because in *Teachers Insurance* the improvement project eliminated previous direct access, where, as we have discussed, in the present case the Landowners never had direct access to Highway 54/400 and Tract 47 did not abut Highway 54/400.

Likewise, in *City of Shawnee*, before the improvement project the subject property had several direct access points, including one to K-7 Highway and one to 71st Street near the intersection of K-7 Highway and 71st Street. The City contended that evidence of the closing of the K-7 Highway and 71st Street intersection should not have been admitted because the closing of that intersection was not explicitly mentioned in the appraisers' report. In holding that the district court did not abuse its discretion by admitting this evidence, the *City of Shawnee* court observed that the property's direct access point to K-7 Highway was taken by the City. And although the City did not take the landowners' direct access to other roadways, the access from the southern part of the property to K-7 Highway was now only available by a circuitous route over county roads. Instead of access within ¼ mile, the landowners or those seeking entry to the property from 71st Street would have to drive some 3.5 miles to the north and east or some 9 miles to the south and east. As with *Teachers Insurance*, *City of Shawnee* does not lend credence to the Landowners' "right of access" ar-

guments because the *City of Shawnee* landowners lost direct access to the highway.

The Landowners do find some support in *Kohn Enterprises*, which jumbled the concepts of "right of access" and "regulation of traffic flow." There, the landowner operated a motel and restaurant which fronted and had direct access to a highway and a street. Because of changes to the intersection of the street and highway, the access points were moved. There was a loss of security because there was no longer a view from the motel office of persons entering the premises, and there was also a loss of privacy for motel facilities. Further, access from the highway was severely restricted. This court affirmed the court's determination that a compensable taking had occurred. *Kohn Enterprises*, 221 Kan. at 236-37.

The support that *Kohn Enterprises* provides the Landowners dissipates in light of subsequent decisions in which this court clarified the distinction between "right of access" and "regulation of traffic flow." In *McDonald's Corp.*, this court acknowledged past inconsistencies in cases dealing with "right of access" and "regulation of traffic flow," stating that "[a] review of our highway condemnation case law suggests that the term 'access' has been frequently misused by both litigants and courts." *McDonald's Corp.*, 266 Kan. at 718. The court then explained the "significant distinction" between the two concepts. See *McDonald's Corp.*, 266 Kan. at 718.

*McDonald's Corp.* had originated as an eminent domain action involving highway expansion affecting multiple properties in Wichita. By the time the case reached this court, the property owner that remained in the litigation was Wal-Mart. One of Wal-Mart's arguments was that it should have been entitled to compensation for loss of access. Both before and after the project, Wal-Mart's property had a total of four entrances and exits. In other words, the City of Wichita did not permanently close any of the entrances or exits to the property, and Wal-Mart had the same access to the same streets it previously had. But Wichita had changed the direction and flow of traffic once traffic left Wal-Mart's lot. This court clarified that Wal-Mart "misused the term 'access' in crafting its

arguments" and concluded that no right of access had been taken. *McDonald's Corp.*, 266 Kan. at 720-21.

Since *McDonald's Corp.*, this court has consistently applied the same rationale on "right of access" claims. See *Frick*, 290 Kan. at 881-82 (landowners never had existing access from third lot of subject property to abutting public street that city improved as required in order for landowners to be entitled to compensation for alleged loss of access); *Korytkowski*, 283 Kan. 122, Syl. ¶ 6 (where landowners' property was not physically taken and access to abutting roadway was not disturbed, the necessity of a more indirect route to and from landowners' property did not constitute a taking under Kansas law based on "right of access"); *Kau Kau Take Home No. 1 v. City of Wichita*, 281 Kan. 1185, 1190, 135 P.3d 1221 (2006), *cert. denied* 549 U.S. 1265 (2007), *superseded by statute on other grounds as stated in Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 567-68, 215 P.3d 561 (2009) (inverse condemnation action; recognizing "right of access" is distinct from the "regulation of traffic flow" or "circuity of access" and "right of access" applies only to and from abutting public roads or highways).

In summary, the government's taking of direct access to an abutting roadway is a taking that is compensable in an eminent domain action. In contrast, the government's regulation of traffic flow that may impact indirect access to a nearby roadway is not compensable in an eminent domain action. Because KDOT did not take the Landowners' direct access to 130th Avenue, this does not qualify as a "right of access" case. The district court did not err in finding that the Landowners were not entitled to compensation for loss of highway access.

### ISSUE 3: REASONABLENESS OF KDOT's REGULATION OF TRAFFIC

This leads to the final issue raised by the Landowners, which they present as a subissue of the prior question. In this argument, the Landowners argue "even if KDOT's actions are viewed as changes in the regulation of traffic flow, as KDOT argues, the Landowners still are entitled to the compensation and damages claimed because KDOT has unreasonably exercised its police

power to regulate traffic flow." In support of this argument, the Landowners cite *McDonald's Corp.* in which this court stated that "Wal-Mart cannot recover for the diminution of value of its land due to the changes in flow of traffic where those changes are a reasonable exercise of the City's police power." *McDonald's Corp.*, 266 Kan. at 722. The *McDonald's Corp.* court then asked: "Are the alleged damages to Wal-Mart's property the result of a reasonable and noncompensable exercise of the City's police power?" *McDonald's Corp.*, 266 Kan. at 722. Explaining the significance of the question, the *McDonald's Corp.* court stated: "Initially, the district court is to make a determination of reasonableness. If exercise of police power is unreasonable, a taking has occurred and a compensation award is appropriate." *McDonald's Corp.*, 266 Kan. at 724.

What the Landowners fail to recognize is this court's later clarification of this point. In *Korytkowski*, which was an inverse condemnation case based on an alteration of traffic patterns, we held:

"When a landowner's access to an abutting roadway has been taken, there has been an exercise of eminent domain that requires just compensation. When a landowner's access to nearby roadways has been altered or restricted through the regulation of traffic flow, there has been an exercise of the government's police power that must have been reasonable. [Citation omitted.] In this latter situation, there is no taking, and thus an action for inverse condemnation cannot succeed." *Korytkowski*, 283 Kan. at 130.

Later in the *Korytkowski* opinion, we further explained:

"[A]n unreasonable exercise of [police] power might support a claim, just not a claim under an inverse condemnation theory. Although reasonableness is the standard by which we determine whether a government's exercise of police power is valid, reasonableness is not the appropriate standard to determine whether a government action affecting real property in private hands constitutes a taking." *Korytkowski*, 283 Kan. at 132.

The basis for this holding was discussed in *Zimmerman v. Board of Wabaunsee County Comm'rs*, 293 Kan. 332, 346, 264 P.3d 989 (2011). In *Zimmerman*, this court held that reasonableness of governmental action raises a due process issue, not a takings issue. Further, we held that if a governmental agency exercises its power

in an unreasonable fashion, its action is void, not compensable. *Zimmerman*, 293 Kan. at 346.

This means that the issue of the reasonableness of KDOT's regulation of the traffic flow does not relate to the question of compensation for a taking, which, as we have noted, is the sole issue in an eminent domain appeal from an appraiser's award. See K.S.A. 2011 Supp. 26-508(a) (in an eminent domain action, "[t]he only issue to be determined therein shall be the compensation required by K.S.A. 26-513"). Even though the reasonableness of the governmental action is not related to the issue of compensation, in *McDonald's Corp.* and some other previous cases, the reasonableness of traffic regulation was considered in an eminent domain action. *McDonald's Corp.*, 266 Kan. at 722-24; see, *e.g.*, *Hudson v. City of Shawnee*, 246 Kan. 395, 403-04, 790 P.2d 933 (1990) (city did not raise issue of a noncompensable regulation under the police power until the eminent domain action was in progress; court held landowners could "challenge the reasonableness thereof in an implied contract action against the City" or "where a condemnation action is pending . . . the unreasonableness of the police power regulation may be tried in the condemnation action").

Yet, in considering the reasonableness of the traffic regulation, the *McDonald's Corp.* court did not deem the question to be part of the issue of compensation under K.S.A. 26-513. Rather, the *McDonald's Corp.* court referred to the reasonableness of the exercise of police power as a question "related" to the eminent domain action. *McDonald's Corp.*, 266 Kan. at 709. Further, the court held a claim to diminished value of property due to a change in traffic patterns did not fall under K.S.A. 26-513(d)(2) and could not be "repackaged" and brought under a theory that the factors in K.S.A. 26-513(d) were not exclusive. *McDonald Corp.*, 266 Kan. at 721-22.

This holding is significant in light of several recent decisions of this court in which we rejected prior decisions that allowed "related" issues to be brought in an eminent domain appeal from an appraiser's award. We have explained that "subject matter jurisdiction is vested by statute," and "an eminent domain action is a special statutory proceeding that does not provide a forum to liti-

gate noncompensation issues, such as the necessity and extent of the taking. [Citation omitted.]" *Miller v. Glacier Development Co.*, 293 Kan. 665, 669-70, 270 P.3d 1065 (2011) (*Glacier II*); see *Miller v. Bartle*, 283 Kan. 108, 116, 150 P.3d 1282 (2007) (An eminent domain action " 'does not provide a forum for litigation over the right to exercise eminent domain or to determine the extent of said right.' "); *In re Condemnation of Land for State Highway Purposes*, 235 Kan. 676, Syl. ¶ 1, 683 P.2d 1247 (1984) (same).

This holding is based on the plain language of K.S.A. 2011 Supp. 26-508(a), which, as we previously noted, states the person appealing "shall bring the issue of damages to all interests in the tract before the court for trial de novo. . . . The only issue to be determined therein shall be the compensation required by K.S.A. 26-513, and amendments thereto." By limiting the issue in an appeal from an appraisers' award to compensation, the Kansas Legislature limited the court's subject matter jurisdiction to the issue of compensation, meaning issues such as the right to exercise the power of eminent domain, necessity, and the extent of a taking may only be litigated in a separate civil action, usually in an action for injunction. *Miller*, 283 Kan. at 117.

Although neither party questions whether this court has subject matter jurisdiction over this issue, subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 166, 210 P.3d 105 (2009). In fact, "parties cannot confer such jurisdiction upon a court by consent, waiver, or estoppel. [Citation omitted.]" *Glacier II*, 293 Kan. at 669; see *Woods v. Unified Gov't of Wyandotte County/KCK*, 294 Kan. 292, 275 P.3d 46 (2012).

We not only raise the question, we conclude we do not have subject matter jurisdiction because, even if KDOT's exercise of its police power was unreasonable, the Landowners' recourse does not lie in eminent domain compensation. The Kansas Legislature has limited jurisdiction in an eminent domain action to the issue of appropriate compensation for a lawful taking, and neither the parties nor the court can expand the statutorily defined jurisdiction. Consequently, neither this court nor the district court has jurisdic-

tion to consider this issue during an appeal from an appraisers' award. We, therefore, dismiss this issue for lack of jurisdiction.

In summary, in addition to dismissing the issue regarding the reasonableness of KDOT's regulation of traffic for lack of subject matter jurisdiction, we affirm the district court's findings that the Landowners' "right of access" was not a compensable taking and reverse the district court's finding in which it prohibited the Landowners from presenting evidence showing that the most advantageous use of Tract 47 was its integrated use with Tract 38. Because the Landowners were prevented from presenting evidence related to its theory of the highest and best use of Tract 47, we remand for further proceedings.

Affirmed in part, reversed in part, dismissed in part, and remanded.

BILES, J., not participating.